PETER HILL *versus* PORTLAND & ROCHESTER RAILROAD
COMPANY.

The maxim—" So use your own property as not to injure the rights of another," is applicable alike to corporations and individuals.

A railroad corporation has the right to establish reasonable signals to be given for the starting of trains from its stations.

Hill *v.* Portland & Rochester R. R. Co.

Whether or not the loud and sudden sounding of a steam-whistle is a reasonable signal for such purpose, and within the rule of ordinary care, depends upon all the circumstances of each particular case; and it is a question for the jury.

In the trial of an action for personal injury to the plaintiff, caused by being thrown from his carriage in consequence of his horse becoming frightened at the sound of a locomotive whistle, at a railroad crossing near a station, it is competent for the plaintiff to show that the sound of the whistle produced a similar effect upon other horses, at the same time and place.

Also to show the usual effect of that whistle, at the same place, on ordinary horses.

It is not competent for the corporation to ask a witness acquainted with the practice of railroads generally, and who had had charge of another railroad for sixteen years, whether or not, in his opinion, the signals in question were "reasonable or unreasonable," "prudent or extraordinary;" or whether or not similar signals were given by other railroad corporations.

ON EXCEPTIONS and MOTION to set aside the verdict as being against law and evidence.

CASE, for personal injury to the plaintiff in consequence of his horse becoming frightened by the loud and sudden blowing of defendants' locomotive whistle, at a railroad crossing near the Buxton station.

The verdict was for the plaintiff, and the defendants alleged exceptions.

The case is sufficiently stated in the opinion.

*Deane & Verrill*, for the defendants, cited

1 Redfield on Railroads, 397; *Illinois Central Railroad* v. *Rudy*, 17 Ill., 580–3; *Gahagan* v. *B. & L. Railroad*, 1 Allen, 187; *Seaver* v. *B. & M. Railroad*, 14 Gray, 469.

*Chisholm & E. B. Smith*, for the plaintiff, cited

1 Greenl. on Ev., §§ 82, 83, 84, & 431; *Bradley* v. *B. & M. Railroad*, 2 Cush., 539; *Linfield* v. *O. C. Railroad*, 10 Cush., 562; *Cope* v. *Dodd*, 13 Penn., 33; *Leach* v. *Perkins*, 17 Maine, 464; *Custill* v. *Crawford*, 7 Ala., 335; *Miller* v. *Pendleton*, 8 Gray, 547; *Maury* v. *Tallmadge*, 2 McLean, 157; *Cole* v. *Fisher*, 11 Mass., 137.

KENT, J. — The defendants move for a new trial on the ground that the verdict is against evidence and the weight

of evidence. On a careful examination of the evidence as reported, we think there was evidence from which a jury might find these facts, viz.,—that the plaintiff, driving a quiet and safe horse, stopped near the crossing, because the train was at the depot and apparently about to start, and he did not think it prudent to attempt to pass over the track, the head of the engine being 15 or 20 feet only from the highway at the crossing; that the time of stopping the train at the depot was irregular, sometimes 10 or 15 minutes and sometimes the train making but a momentary stop; that, in this condition of things, the engineer, according to the custom then on this road, sounded the whistle twice, very suddenly, and the sounds were very loud and sharp, and brief; that these sounds alarmed plaintiff's horse very much, and he suddenly turned and threw the plaintiff out of his carriage, who, by his fall and the consequences resulting from it, suffered injury and damage to his person; that the engineer was in a situation to see the plaintiff and his horse, before he sounded the whistle; that it was sounded before the train started.

There was evidence in some degree qualifying, or perhaps contradicting some of these positions,—but it seems to us that a jury might honestly find them to be true on the whole evidence. If so, then the verdict for plaintiff can only be set aside by establishing one of the following positions; that the engineer had a legal right to sound the whistle as he did, and that the company would not be responsible for the act, under any circumstances; or that, under the circumstances of this case, it was proper and prudent, and not exceeding the rule of ordinary care, for him to do what he did; or, that the plaintiff contributed to the accident and injury by his own want of reasonable prudence and ordinary care on his own part.

As to the first proposition, we do not find any specific ruling reported in the exceptions, except the following,—"that the mere fact that such a rule of blowing the whistle as had been testified to, had been established, and practiced for a year or more by this company, does not operate as a

justification in this case, if it was an unreasonable, unauthorized rule, and an infringement of the plaintiff's rights."

The exceptions state that other rulings, not excepted to, were given.

A railroad company has an undoubted right to establish rules and regulations in reference to the mode and manner of giving notice at stations or other places. It is right and proper that sufficient notice should be given to passengers, that the train is about to start. But all such rules must be subjected to the test of reasonableness, in view of the rights and duties of citizens who may be affected by them. No corporation can rightly disregard these rights, when adopting its own rules of action, or giving directions to its servants or agents. The great maxim of "*sic utere tuo*" applies to corporations as to individuals. *Shaw* v. *Worcester Railroad*, 8 Gray, 66. A mode of giving notice, for instance, may be convenient and save some labor, and may answer well all the purposes of the company, and yet may be used at some time or place when it is liable to cause damage, whilst, at some other time or place, it would not be subject to such objection. It might be safe and prudent to sound a loud and sudden whistle at a station, at a distance from any highway or crossing, when it would not, where there was such crossing, with many horses near it, awaiting the passing of the engine and train. We cannot sanction the claim of any railroad to establish and execute its own rules, at its own pleasure, without reference to others' rights and privileges.

The whistle seems to be particularly adapted to give notice of the approach of a train to a crossing of a highway. The object then is to warn all persons of such approach in season to enable them to stop at a safe distance, and thus avoid the risk of collision and of alarm to horses. Indeed, the law requires that such notice shall be given by bell or whistle. Of course, no railroad company can be held liable for damages for giving such notice as is required by law,

when given at the distance named in the statute. The company may be liable for the damages occasioned by a neglect of this duty. But the statute does not authorize or require the sounding of the whistle at any other time or place. The right or liability, at other times and places, depends upon the general principles of law, as before explained, applicable to the particular facts in each case.

In every case, then, it becomes a question, whether, in that particular case, the act was reasonable and within the rule of ordinary care, under all the circumstances of time and place and all the surroundings. It would seem, that there may be a decided difference in "whistles," in their suddenness, loudness and brevity, and consequently in their liability to alarm horses. Again, reasonable care might require of the engineers to look ahead to see if any horses are on or near the track, particularly when near to a highway, which crosses the railroad immediately in front of the engine, and to abstain from the use of the whistle and resort to his bell, if he sees any animal within twenty feet and in front of his engine. There can be no doubt, we presume, that the ringing of the bell is the safest and, usually, the best understood notice to passengers that the train is about to start.

We do not mean to decide that a whistle can never properly be used for this purpose, although the use of a bell for this particular purpose seems less liable to objection. But it is a question, in every case, for the jury to decide whether in the case before them its use was justifiable, or prudent, or proper. We cannot doubt that proper instructions were given by the Court on this point, and we see no sufficient reasons for setting aside the verdict on this ground.

The other point on which the motion rests, is that the plaintiff contributed to the injury by his own want of care and prudence. It is urged that he might have crossed the road and gone beyond danger of alarm, after he arrived at the place where he stopped. The answer to this is, that the

time when the train would start was not regular or fixed, but quite uncertain.

It is said he did actually start to go over, an instant before the whistle sounded, and that · this was want of care and contributed to the injury. If the injury had arisen from a collision between his horse and carriage and the engine, this fact would be of more importance, and might go far to show a want of care. But there was no collision. The horse was frightened. And, it might be fairly urged that he would have been equally alarmed if he had stood still where he was a moment before. He could not have moved many feet from that spot. At all events, all these facts and circumstances were before the jury, and their decision is not, in our view, manifestly wrong on the evidence. There are no exceptions to the law as given to the jury on this part of the case.

The exception taken to the question proposed to S. L. Hill cannot be sustained. This witness was on the spot with his own horse. It was competent, clearly, for the plaintiff to show that the whistle produced the same effect on his horse that it did on plaintiff's horse. This was pertinent to the issue, and bore directly on the nature, extent and actual effect of the noise made by the defendants' engine.

A witness for plaintiff was asked by him, in reference to the whistle on this road at this place, what is the usual effect of this on ordinary horses? This question was objected to, but admitted. The witness answered,—"I have seen a great many horses frightened by it." It is stated, in the exceptions, that no answer, given to any question objected to, was made on the ground of not being responsive to the question, or as being more objectionable otherwise than the inquiry, nor was any request made concerning the same. Was it competent for the plaintiff to show the usual effect of this whistle on horses of ordinary character. Why not? One leading question in the case was,—whether it was reasonable for the engineer to apprehend or suppose that the noise

suddenly made would frighten horses. In other words, it was competent to show to the jury, some of whom might never have heard such a whistle, the nature, extent and all the characteristics of the sound emitted, and its effects on horses of ordinary steadiness. We think the defendants might have proved, if they could, that the whistle had been in use for years, and that no horse had ever been alarmed by it. And so, as bearing on the same points, the plaintiff might show what effect had actually been produced by it on horses.

The objection is restricted to the question. If there was any objection to the answer, it should have been made specially, and the exceptional part might have been stricken out, or if not, been excepted to. The question was not as to the usual effect of railroad whistles, but what the effect of this particular whistle at this place had been within the knowledge of the witness. We think the question admissible, within the rules of evidence.

The questions put to S. T. Corser, and objected to by plaintiff and excluded, related chiefly to the witness' opinion and judgment whether the blowing of the whistle was safe and prudent. He was asked whether in his opinion this practice on this road was "reasonable or unreasonable," "prudent" or "extraordinary," or "an unreasonable manner of proceeding on the part of the engineer." It is very clear that these questions were inadmissible. They proposed to obtain from the witness answers to questions which the jury were to answer, where the facts were of a character equally within the knowledge and comprehension of the jury as of the witness. They ask for mere naked expressions of opinion as to the character and quality of acts open to common observation. *Mulray* v. *Railroad*, 5 Gray, 541.

This witness was also asked whether it was not a custom on other railroads to blow two whistles upon starting the train, the witness having stated that he was acquainted with the customs of railroads generally, and that he had been in charge of one sixteen years. This was also excluded. It

does not appear in terms, whether the object was to prove a general custom on all railroads. The question might be limited to one or two roads. But, if such a general custom could be established, it would not be a legitimate defence in this case, or tend to establish it. If all the railroads in the country adopt any rule or custom, which is unreasonable or dangerous and productive of injury, the generality of the custom cannot, in a given case, in any degree excuse or justify the act. Every case must be determined upon its facts, and not upon the proceedings of other corporations in somewhat similar cases. *Miller* v. *Pendleton*, 8 Gray, 547.

<em>Exceptions and motion overruled.</em>

WALTON, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.