[Civ. No. 21871.   First Dist., Div. One.   May 13, 1965.]

LEO BLANK, Plaintiff and Appellant, v. THE PALO ALTO-STANFORD HOSPITAL CENTER et al., Defendants and Respondents.

378

Theodore C. Carlstrom, Paul N. McCloskey, Jr., McCloskey, Wilson & Mosher, and McCloskey, Wilson, Mosher & Martin for Plaintiff and Appellant.

J. Ronald Hershberger, John E. Lehman, Samuels, Thoits, Lehman & Hanna, Gerard Wagstaffe, Wagstaffe, Daba & Hulse, Gordon M. Weber, John N. Hauser, John B. Lowry and McCutchen, Doyle, Brown, Trautman & Enersen for Defendants and Respondents.

Musick, Peeler & Garrett and James E. Ludlam as Amici Curiae on behalf of Defendants and Respondents.

SIMS, J.—Plaintiff has appealed from a judgment which denied him relief in an action in which he sought injunctive relief and damages for his alleged wrongful exclusion from use of the facilities of the diagnostic X-ray department maintained by the defendant Palo Alto-Stanford Hospital Center, a corporation, (hereinafter referred to as the Hospital Center) and operated by it through a contract with the defendants Boice, et al., operating under the name of Boice, Jones & Associates, who in turn contracted with the defendant Palo Alto Medical Clinic, a partnership, for the services of certain doctors to assist in the operation of the department.

Plaintiff's complaint set forth two causes of action. The first cause of action sought injunctive relief and damages for unlawful restraint of trade under the so-called Cartwright Act (Bus. & Prof. Code, § 16750). The second cause of action sought a declaration that contracts amongst the various defendants for the exclusive operation of the Palo Alto Diagnostic X-ray Department were void as being in restraint of trade and in violation of sections 16600 and 16722 of the Business and Professions Code.

The case was tried for 14 days between July 10 and August 1, 1962. Thirty-five witnesses were heard and over 50 exhibits were introduced. While under submission the decision in the case of *Willis* v. *Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806 [26 Cal.Rptr. 640, 376 P.2d 568] promulgated the rule "that antitrust legislation providing for treble damages should not be applied to the professions unless the language clearly calls for such an application, and this . . . the language of the Cartwright Act does not do." (58 Cal.2d at p. 809.) The opinion recognizes, however, that "There is an established

principle at common law that an action will lie where the right to pursue a lawful business, calling, trade, or occupation is intentionally interfered with either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification.'' (58 Cal.2d at p. 810.)

The trial court in subsequent conclusions of law noted that the Cartwright Act did not apply to restraints on the practice of medicine, but nevertheless went on to conclude that, ''No common law or statutory right of the plaintiff has been intentionally interfered with by defendants through unlawful means or means otherwise lawful without sufficient justification.''

Appellant contends on appeal, first, that a hospital board may not unreasonably or arbitrarily exclude or deny a physician the use of hospital facilities;[1] and, alternatively, that if a hospital, together with members of its staff, combine and agree to exclude a physician from using the hospital facilities without sufficient justification they are liable for the damage thereby resulting to the excluded physician. He takes the position, which may be accepted for this review, that the test of whether an exclusion is unreasonable or arbitrary under the first theory for all practical purposes involves the same criteria and considerations as the test to determine whether sufficient justification exists for a combination which restricts the activities of another.

Distilled to its essence, the question is whether the record in this case compels an interference with the administrative decision of the governing board of the hospital to have a closed staff, as distinguished from an open staff radiology department. On the one hand, it is clear that qualified surgeons may use the operating room, and on the other, that the internists on prescribing a diet do not invade the hospital kitchen. ■ It would appear that what should be proper procedure for X-ray, pathology, and related services and departments, would be better determined in calm administrative

[1]The facilities referred to herein are the physical facilities and attendants of the Palo Alto Diagnostic X-ray Department within the hospital. He is admittedly a member of the hospital staff and entitled to all the privileges of such membership. Discrimination in admission to staff privileges, or his professional competency, character, or professional ethics, are not in issue. (Cf. *Willis* v. *Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806 [26 Cal.Rptr. 640, 376 P.2d 568]; *Rosner* v. *Eden Township Hospital Dist.* (1962) 58 Cal.2d 592 [25 Cal.Rptr. 551, 375 P.2d 431]; *Martino* v. *Concord etc. Hospital Dist.* (1965) 233 Cal. App.2d 51 [43 Cal.Rptr. 255]; *Rosner* v. *Peninsula Hospital Dist.* (1964) 224 Cal.App.2d 115 [36 Cal.Rptr. 332]; and *Wyatt* v. *Tahoe Forest Hospital Dist.* (1959) 174 Cal.App.2d 709 [345 P.2d 93].)

hearings than by adversary proceedings in the courtroom. Where, however, the discretion inherent in the determination of such questions is abused so as to violate recognized rights, such as that to pursue a lawful calling, the courts should not hesitate to intervene.

The following facts were agreed upon by the parties: Plaintiff is a doctor specializing in radiology and has, since approximately 1954, maintained offices in the City of Palo Alto. He is a member of the Palo Alto Medical Staff and the Stanford Medical Staff of the defendant Hospital Center.

The Palo Alto-Stanford Hospital Center is a hospital facility located at Palo Alto, California, owned in part by the Board of Trustees of the Leland Stanford Junior University and in part by the City of Palo Alto, a municipal corporation. It is managed and operated by a California nonprofit corporation known as the Palo Alto-Stanford Hospital Center, which corporation is equally owned and controlled by said board of trustees and said city. The Hospital Center operates two diagnostic radiology departments, one of which is commonly known as the "Palo Alto Diagnostic X-ray Department" and the other of which is commonly known as the "Stanford Diagnostic X-ray Department." Both departments are in the area of the Hospital Center designated as "The Core" and as such were constructed with funds contributed 65 per cent by said board of trustees and 35 per cent by said city.

Defendants Clyde Boice, Howard Jones and Robert Brown are doctors specializing in radiology and are partners practicing under the name Boice, Jones & Associates. John Weigen and Melvin Stevens are doctors specializing in radiology and, in association with other doctors, are partners practicing under the name the "Palo Alto Medical Clinic." Richard Kramer is a doctor specializing in radiology and is employed by said clinic.

The defendant Hospital Center has entered into a written contract with defendants Boice, Jones and Brown whereby the latter are to have full charge and supervision of the Palo Alto Diagnostic X-ray Department, which contract permits said doctors, at their own expense to engage an assistant or assistants. Doctors Boice and Jones entered into a written contract with the aforementioned radiologists of the Palo Alto Medical Clinic by which the latter were engaged to assist Doctors Boice and Jones in the operation of the Palo Alto Diagnostic X-ray Department. Said contract had and has the

approval of the Board of Directors of the defendant Hospital Center.

The defendant Hospital Center is governed by a board of directors consisting of twelve members, six of whom are appointed by the Board of Trustees of Leland Stanford Junior University, and six by the City of Palo Alto.

The practice of diagnostic radiology is an integral part of the practice of medicine and is a medical service and not merely a hospital service; the defendant Hospital Center treats radiology as a separate specialty field entitled to full departmental status along with the departments of surgery, pediatrics, and other fields.

Under prevailing conditions in the City of Palo Alto and the communities contiguous thereto, a portion of the diagnostic radiology work available to practicing physicians is performed in the Palo Alto-Stanford Hospital Center through the use of facilities in said hospital.

In Palo Alto and elsewhere, a qualified specialist in diagnostic radiology receives nearly all of his patients on the basis of referrals from and recommendations by other physicians.

The doctors specializing in radiology who are active, associated or courtesy members of the Hospital Center staff are as follows: An active staff consisting of nine doctors—the plaintiff, Boice, Jones, Brown, Weigen, Stevens and three other doctors, two from Los Altos and one from Menlo Park (the former six are all from Palo Alto and plaintiff is the only one from that location who does not have the use of the facilities); an associate staff consisting of Dr. Kramer, also from Palo Alto; and a courtesy staff consisting of seven doctors from the Stanford Medical School and one each from Palo Alto and Menlo Park.

As a result of the contract method of operating the Palo Alto Diagnostic X-ray Department, hereinabove referred to, only Doctors Boice and Jones and their associates and assistants have the exclusive right to perform diagnostic radiology in said department. However, plaintiff, as a member of the Palo Alto Medical Staff of the defendant Hospital Center, may read any of the X-ray films of the Palo Alto Diagnostic X-ray Department and may enter his opinion on the chart of any hospitalized patient if requested to do so by said patient or said patient's admitting physician, and plaintiff may charge such patient for said services.

The defendant Hospital Center has entered into a contract with other radiologists for the supervision and operation of the Stanford Diagnostic X-ray Department, which contract although not in writing, is similar in all other respects to the contract between the Hospital Center and defendants Boice and Jones heretofore referred to. The selection of either diagnostic radiology service for any patient who is cared for in the Palo Alto-Stanford Hospital Center is at the option of the patient's admitting physician.

Further facts, both admitted and controverted, will be alluded to herein in connection with the discussion of appellant's attack on the findings of fact and conclusions of law.

Preliminarily it may be noted that an issue was raised by plaintiff as to whether the facilities in question should be considered as those of a public hospital or of a private, non-profit hospital. The defendants asserted, ''That defendant Hospital Center is a single, private, non-profit hospital but that the question of private (proprietary) vs. public (governmental) is not a material issue, since the governing board of a private hospital has an unrestricted right to enter into such an exclusive contract and since the governing board of a public hospital may enter into a similar exclusive contract if its decision to do so is not arbitrary or unreasonable.''

The trial court made no finding as to whether the hospital was private or public because it found that its governing body was entitled to adopt and had adopted reasonable rules and regulations for the operation of the hospital, and that it was entitled to select and had selected a method of operating its radiology department which was reasonable and proper. For purposes of this appeal it will be assumed that regardless of its status the Hospital Center and its governing board do not have the unrestricted right to enter into an exclusive contract, and can only do so if its action is not arbitrary or unreasonable.[2]

A second question involving the factual conclusions of the trial court is raised by appellant's attack on the admission of evidence of the practice and custom in other hospitals in reference to arrangements made for the operation of a radi-

---

[2]Some decisions indicate that there may be no distinction based on the proprietary or governmental character of the hospital insofar as judicial review of an arbitrary or unreasonable exclusion of a qualified physician is concerned. (*Willis* v. *Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568]; *Greisman* v. *Newcomb Hospital* (1963) 40 N.J. 389 [192 A.2d 817, 821].)

ology department. He relies upon authorities which establish that custom will not justify a course of business—the use of the waters of navigable streams for an outlet for the debris from hydraulic mining—which creates a public nuisance—interference with rights of the people of the state in navigable waters (*People* v. *Gold Run Ditch & Min. Co.* (1884) 66 Cal. 138, 150-152 [4 P. 1152, 56 Am.Rep. 80]); that acts or omissions otherwise negligent cannot be justified by showing that others who are engaged in the same business or who drive on the same street generally practice a similar want of care (*Mehollin* v. *Ysuchiyama* (1938) 11 Cal.2d 53, 57 [77 P.2d 855]; *Hill* v. *Portland etc. R.R. Co.* (1867) 55 Me. 438 [92 Am. Dec. 601, 605-606]; *People* v. *Kiss* (1954) 125 Cal.App.2d 138, 142 [269 P.2d 924]);[3] that fraudulent conduct—withholding of discounts due the principal by an agent—cannot be justified by the similar practice of other agents (*Store of Happiness* v. *Carmona & Allen, Inc.* (1957) 152 Cal.App.2d 266, 275 [312 P.2d 1104]); and that violations of the Sherman Anti-Trust Act, or other federal regulations, by the creation of a monopoly through financial control of those who would otherwise purchase goods in the open market (*United States* v. *National City Lines* (7th Cir. 1951) 186 F.2d 562, 572) or by price fixing combinations or agreements (*Local 36 of International Fishermen etc. of America* v. *United States* (9th Cir. 1949) 177 F.2d 320, 332; and *Hills Bros.* v. *Federal Trade Com.* (9th Cir. 1926) 9 F.2d 481, 484-485) cannot be justified by showing similar business practices by others.

The issues in this case as defined by the reference to *Willis, supra,* are (1) whether there is an interference with plaintiff's right to practice his calling, (2) whether such interference is intentional, and, if so, (3) whether such interference is either (a) by unlawful means, or (b) by means otherwise lawful, when there is lack of sufficient justification. (See 58 Cal.2d at p. 810.)

Appellant, himself, requests this court to rule on the reasonableness of the action of the Hospital Center, and the justification for the contracts which it is alleged exclude him from

---

[3] "[E]vidence of custom may not be offered for the purpose of 'excusing a negligent act' but the same evidence of custom may be offered for the bearing it has to evidence due care or a want of it. (Cf. Prosser on Torts § 37.)" (*Miller* v. *Midway Fishing Tool Co.* (1951) 106 Cal. App.2d 612, 615 [235 P.2d 630]; and see *Scott* v. *Gallot* (1943) 59 Cal. App.2d 421, 424-426 [138 P.2d 685]; *Thurman* v. *Clune* (1942) 51 Cal. App.2d 505, 507-508 [125 P.2d 59].)

the use of the facilities in question. He has alluded to the following principles: ''Persons who cause harm to another by a concerted refusal in their business to enter into or to continue business relations with him are liable to him for that harm, even though they would not be liable for similar conduct without concert, if their concerted refusal is not justified under the circumstances'' (Rest., Torts, § 765(1)); ''. . . .one who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into . . . a business relation with another is liable to the other for the harm caused thereby'' (Rest., Torts, § 766, cl.(b)); and the rules in the Restatement of Contracts relating to ''Bargains in Restraint of Trade'' (Rest., Contracts, §§ 513-519, see particularly §§ 513, 514, 515, cl. (d), and § 516, cl. (e)).

An examination of the foregoing precepts, and the qualifications thereof (Rest., Torts, §§ 765(2) and 767) indicates that an agreement which confers an exclusive privilege and by reason thereof excludes others is not per se illegal.

Among the facts to be considered in determining ''justification'' (Rest., Torts, § 765) is ''the appropriateness of the actors' conduct as a means of advancing their interests and the availability of less harmful means to that end'' (*idem,* cl. (c)); among the criteria of ''privilege'' (Rest., Torts, §§ 766, 767) are ''the nature of the actor's conduct'' and ''the nature of the expectancy with which his conduct interferes'' (*idem.,* § 767, cls. (a) and (b)); and the unreasonableness of a contract which restrains trade (Rest., Contracts, §§ 513-516) depends on not only a resulting monopoly, but whether or not the contract tends or has for its purpose the creation of such monopoly, and whether or not such monopoly, if so created, is attended by any dominant social or economic justification. The evidence as to the practice among hospitals in general is relevant, competent and material on most, if not all, of the foregoing issues, as will more fully appear in reviewing appellant's attack on the sufficiency of the findings and judgment.

Although appellant has merged his two contentions and sought review on the issues of reasonableness and justification as to both, it is apparent that when rejuxtaposed the issues are not necessarily coterminous and coextensive. Although it may be assumed that a public, and for purposes of this case, a private hospital may not unreasonably or arbitrarily exclude a physician otherwise qualified from member-

ship on its staff (see fns. 1 and 2 *supra*), it does not necessarily follow that it may not provide by regulation, or otherwise, that certain facilities shall be operated by the hospital itself to the exclusion of all members of the staff except those who may be coincidentally employed in such operation.

On the one hand, it is recognized that "The refusal of access to a . . . hospital could, as a practical matter, have the effect of denying to a licensed doctor qualified to practice in California the right to fully exercise his profession." (*Rosner* v. *Eden Township Hospital Dist.* (1962) 58 Cal.2d 592, 598 [25 Cal.Rptr. 551, 375 P.2d 431]; and see *Rosner* v. *Peninsula Hospital Dist.* (1964) 224 Cal.App.2d 115, 120 [36 Cal.Rptr. 332]; and *Wyatt* v. *Tahoe Forest Hospital Dist.* (1959) 174 Cal.App.2d 709, 715 [345 P.2d 93].) *Wyatt* recognizes that this conclusion is predicated on the fact that "In many instances only a hospital has the facilities necessary for proper diagnosis or treatment." (174 Cal.App.2d at p. 715.) The later *Rosner* case notes that a surgeon cannot practice his profession except in a hospital. The earlier *Rosner* case referred to the provisions of law governing district hospitals which recognize that a medical staff may consist of various fields of practice in that the statutes authorize rules which restrict membership on the medical staff "to physicians and surgeons competent in their respective fields." (Health & Saf. Code, § 32128, subd. 2; 58 Cal.2d at pp. 596-597.)

From the foregoing it might be implied that it is idle to say that a hospital may not arbitrarily or unreasonably exclude a physician otherwise qualified from its staff, and yet at the same time permit it to deny him the right to use facilities which are necessary for the practice of his specialty. ■ Nevertheless, an examination of the nature of the speciality of radiology, of the hospital's responsibility for providing radiological diagnostic facilities, and the manner in which the Hospital Center's Board resolved the question of how to furnish such facilities, sustains the trial court's findings that "the exclusive contract method of operating the Palo Alto Diagnostic X-ray Department was, and is, a reasonable and proper method of operating the department. . . ."

It is recognized, as stipulated, that the practice of diagnostic radiology is an integral part of the practice of medicine and is a medical service and not merely a hospital service, and that it enjoys departmental status along with surgery, pediatrics, and other fields in the staff organization of the hospital.

On the other hand, it is conceded that the radiologist does not generally himself alone engage in the diagnosis, care and treatment of a patient, but that those on which he practices are nearly all received on the basis of referrals from and recommendations by other physicians. Where the radiologist prepares the patient for a radiologic procedure, takes or supervises the taking of the desired plate or film and then renders his opinion, he provides a primary medical service as distinguished from a secondary or consultive medical service in rendering an opinion on the plates or films of another. The degree to which the skill of the radiologist enters into or is actually applied to the process of preparing for and taking the film varies with the nature of the infirmity to be diagnosed and the procedure to be used.

The rules governing the operation and construction of hospitals require that a hospital provide and maintain certain facilities including diagnostic X-ray facilities. (Cal. Admin. Code, tit. 17, Public Health, ch. 1, Administration, subchapter 3, Hospital Inspection, group 2, Hospitals, etc., subgroup 1, Requirements for all Hospitals, etc., §§ 231-381, particularly art. 15, Adjunct Facilities, § 362, Radiology; and subgroup 2, Requirements Governing Specific Buildings, etc., §§ 400-499, particularly art. 11, Adjunct Diagnostic and Treatment Facilities, § 484, Radiology.) An examination of these rules reflects that although radiology is a medical service and an integral part of the practice of medicine, it is no less a hospital service or facility like a laboratory, pharmacy, outpatient facility, physical therapy department, or morgue and autopsy facility. (*Idem.* §§ 361-365, and §§ 483-488 and 499.)

The space and equipment devoted to radiology, therefore, has a potential for two uses: First, to provide the continuous diagnostic service which the law requires the hospital to furnish, and, secondly, for the use by any qualified staff radiologist when such a diagnosis is requested of him by a patient of the hospital either directly or through his attending physician.

The trial court found as follows:

"14. Between May 21, 1958, and August 27, 1959, prior to the opening of the new hospital in the fall of 1959, the Board of Directors of defendant Hospital Center investigated various means and ways of furnishing diagnostic x-ray services, taking into consideration, among other things, existing hospital contracts for radiology, pathology, electrocardiology

and electro-encephalography, a model contract prepared by the California Hospital Association, a survey of methods or organization of radiological departments in Arizona and New Mexico and a publication of the American College of Radiology suggesting alternate forms of arrangements. The various possibilities were discussed at several board meetings and members of the Board of Directors talked with a number of individuals in the fields of radiology and hospital administration. Based on such considerations, the Board of Directors decided that its responsibility to furnish diagnostic x-ray services could best be discharged by operating its departments of radiology through exclusive contracts with radiologists selected by the board.

"In executing said contract of August 27, 1959, with defendants Boice, Jones and Brown, it was the judgment of the Board of Directors of the Hospital Center that the contract was in the best interests of the public and of the Hospital Center and would promote the efficiency and standards of practice of the Hospital Center and its operation as a general hospital in carrying out the requirements of Section 484, Title 17 of the California Administrative Code. It was the judgment of said Board of Directors that said contract would result in better patient care and more efficient hospital administration than any alternative method of departmental operation.

"15. The decision and action of the Board of Directors of defendant Hospital Center in adopting the exclusive contract method of operating the Palo Alto Diagnostic X-ray Department was, and is, a reasonable exercise of the Board's judgment, and within the scope of the Board's general and specific powers conferred by law and by the Articles of Incorporation and By-Laws of the defendant Hospital Center. In adopting said contract, it was the judgment of the Board of Directors of defendant Hospital Center that such method of operating the department promotes better patient care and more efficient hospital administration in that:

"(a) It facilitates the administration of the department, the supervision and training of the department personnel and the interrelationships between the department and the rest of the hospital;

"(b) It provides assurance of immediate availability of professional radiologists for the operating rooms and emergency rooms of the hospital and assurance of the required

coverage of the department by radiologists at night and on weekends;

"(c) It simplifies the problem of scheduling radiology patients and allows the needs of the patients to take precedence over the convenience of the radiologists;

"(d) It provides continuous availability of professional radiologists for consultation with referring physicians; and

"(e) This method of operating the radiology department is used by substantially all hospitals, whether public or private, in the State of California and in the nation.

"16. The court finds that the governing body of a hospital, whether public or private, is entitled to adopt reasonable rules and regulations for the operation of the hospital and to select a method of operating its radiology department which such governing board reasonably decides is best suited to the needs of the hospital and its patients. The court independently finds that the exclusive contract method of operating the Palo Alto Diagnostic X-ray Department was, and is, a reasonable and proper method of operating the department because of the considerations set forth in subparagraphs (a) through (e) of Paragraph 15 above, which considerations the court further finds are true and applicable at the defendant Hospital Center.

"17. The court further finds that if the hospital radiology department were open to all qualified radiologists who might desire to use its facilities, substantial complications of operation would result which would interfere with proper patient care.

"18. There is no material damage to the public, financial or otherwise, resulting from the adoption of the exclusive contract method of operation of the Palo Alto Diagnostic X-ray Department at the defendant Hospital Center."

Appellant attacks these findings and the conclusions predicated thereon on numerous grounds, some of which are personal to him and will be hereinafter discussed, and the remainder of which reflect on the general policy of the exclusive contract.

He urges that the uncontradicted evidence shows that the exclusive contract causes material damage to the public, contrary to finding "18," because numerous physicians testified that in the exercise of their professional judgment they would recommend appellant to their hospitalized patients if he had facilities at the hospital to perform primary diagnostic radiology. It is asserted that this is an unwarranted interference

with the judgment of the attending physician. Analysis of the testimony of the twelve physicians who appeared reflects that all but one were satisfied with the services rendered by the hospital staff. The suggested lack of adequate diagnosis to the particular hospitalized hard-to-diagnose patient of this doctor, must be offset against the other criteria brought out in the record. If material damage were threatened to the public because of inadequate diagnosis from the facilities furnished by the hospital, it would be assumed that the referring physicians and not the appellant alone would seek and obtain a change in the established system.

Appellant asserts that the public is further damaged because the patient, through his attending physician, is denied freedom of choice of a radiologist; that if he wants the services of appellant for a primary medical service he cannot obtain it at the hospital, and if he wants his secondary diagnosis as a consultant he has to pay fees to two radiologists. Here again there is no substantial evidence that such consulting service was deemed necessary to the point where the referring physicians desired to change the system.

Appellant contends, that in any event, the contract between the Hospital Center and Boice, Jones & Associates is illegal because it provides that the hospital gets 66⅔ per cent and the physician 33⅓ per cent of the gross income from the fees for the diagnostic service which is set by the hospital. He asserts that the arrangements as a whole violate prohibitions against the corporate practice of medicine (*People* v. *Pacific Health Corp.* (1938) 12 Cal.2d 156, 158 [82 P.2d 429, 119 A.L.R. 1284]; and *Pacific Employers Ins. Co.* v. *Carpenter* (1935) 10 Cal.App.2d 592, 594 [52 P.2d 992]) and fee splitting (Bus. & Prof. Code, § 650). This issue was not presented in the pleadings or pretrial order. It is noted that a holding of illegality would not necessarily secure appellant's entry into use of the hospital equipment, but at the best require the Hospital Center to consider new arrangements. In any event, it appears that the doctors retain their freedom of action. (See *Complete Service Bureau* v. *San Diego County Medical Soc.* (1954) 43 Cal.2d 201, 210-211 [272 P.2d 497].) The evidence sustains the conclusion that the portion of the fees received was commensurate with the expenses, direct and indirect, incurred by the hospital in connection with furnishing the diagnostic facilities (*idem.*, at pp. 211-213). Under these circumstances there is no illegality.

Appellant further claims that the exclusive contract violated rules and resolutions of the hospital which gave members of the staff access to the facilities used in the treatment of patients[4] falling within the branch of medicine to which they were appointed. There is some question as to the existence and scope of the rules upon which he relies, but in any event it is clear that in reconciling all of the actions of the governing body of the Hospital Center it will have to be assumed that the particular arrangements made would control the generality of any rules or regulations in conflict therewith.

Finally, in his general attack of the exclusionary system, appellant alleges that it is accomplished by an improper delegation of the determination of who may use the hospital facilities (see *Rosner* v. *Peninsula Hospital Dist., supra*, 224 Cal.App.2d 115, 122). This argument is predicated upon the fact that Boice, Jones & Associates have been given the power to engage assistants, and by reference to evidence which tends to show that this power was exercised to appoint the radiologists from the respondent clinic because of pressure from the doctors of the clinic who comprise about one-third of the Palo Alto Medical Staff and who send about one-third of the patients to the hospital. This argument overlooks that those who are appointed must be members of the staff of the hospital and qualified to be such and must be approved by the governing board of the Hospital Center. Furthermore, it is implied that by the appointment the clinic radiologists are given carte blanche to use the facilities at will, whereas in fact their assignments are integrated with the Boice, Jones & Associates to give the hospital the desired coverage. The evidence supports finding "11" which reads as follows: "The exclusion of the plaintiff from the use of the equipment and facilities of the Palo Alto Diagnostic X-ray Department is not the result of any combination or conspiracy between or among any two or more of the defendants. It results instead from the granting of an exclusive contract to Boice, Jones and Associates and approved subcontractors to perform all radiology work at the hospital which involves the use of the equipment, personnel and supplies of the Palo Alto Diagnostic X-ray Department."

The contention that the exclusive contract interferes with the freedom of choice of the patient and his attending

---

[4]The question of the facilities available for radiological treatment and the regulations of their use is not in issue in this case.

physican is appealing, but it must be weighed in the light of other considerations. The facts found in finding "15," as set forth above, are amply supported by the evidence. That the governing board of the Hospital Center gave due consideration to all factors involved is reflected by unimpeached finding "14." It is concluded as is set forth in the only case on the subject to which the court has been referred: "Basically, it is defendant's position that the resolution follows a practice adopted by most hospitals and advocated by the American College of Radiologists calculated to best serve the interests of hospitals, patients, and medical staffs generally. Much other testimony was advanced in support of the reasonableness of the resolution, particularly as it related to the responsibility and liability of the hospital for negligence in connection with the operation of the equipment in its radiology department. Based upon all such factors, the trial court found that the conduct of the commission in adopting the resolution was not arbitrary or unreasonable, but purely administrative, and in furtherance of its endeavor to operate and maintain the hospital in an efficient manner.

"Since there is ample evidence to sustain this finding, it must follow that even though this court might be of a contrary opinion as to what would be proper practice in the operation of hospital radiology departments, or in the administration of X-ray treatment and therapy, it would not be authorized to substitute its judgment in this respect. The question of good practice is purely administrative in nature and involves no legal principle. It would follow that the resolution challenged was in all respects reasonable and valid, and the trial court's judgment in this respect should be affirmed." (*Benell* v. *City of Virginia* (1960) 258 Minn. 559 [104 N.W.2d 633, 636].)

Appellant further seeks to show that in any event the arrangement causes particular harm to his interests, and that regardless of its general reasonableness the exclusive contract system of operation of the facility is unreasonable, arbitrary, and without justification insofar as it excludes him personally from the X-ray department. Both appellant and respondent Hospital Center are less than candid in enumerating the number of staff members concerned. The former claims he is the only one of seven radiologists on the hospital staff with offices in Palo Alto who is excluded from the use of the facilities. He fails to give weight to the facts that the hospital is used by patients who reside in various locations in the mid-peninsula; that the majority of patients are not residents of

the City of Palo Alto; and that there are three other active staff members who are excluded from the use of the facilities. The hospital on the other hand counts up all of the active, inactive, and courtesy members of the staff in an attempt to demonstrate that a substantially greater number are excluded from use of the facilities in question.

The excluded doctor claims professional damage because he loses valuable experience by being deprived of the opportunity to perform certain radiological procedures which can only be performed in the hospital, and that he loses the opportunity to follow up on, and the privilege of serving the patient himself, when the patient goes to the hospital and subsequent examinations are made there. He asserts economic damage measured by a share in the fees available for the hospital radiologists predicated on the outside practice at the offices of Boice, Jones & Associates, the clinic, and himself, respectively. He claims, on the basis of evidence which indicates that one more radiologist could use the facilities without upsetting scheduling, consultation, and the other factors secured by the exclusive contract, that he alone in any event should be given the privilege of working alongside the contract radiologists.

He is met with the following findings: "13. Plaintiff has from time to time applied for the privilege of using the facilities and equipment of the Palo Alto Diagnostic X-ray Department and plaintiff has had hearings before both the Board of Directors of defendant Hospital Center and before the Palo Alto Medical Staff in connection with such applications.

". . . . . . . . . . . .

"19. The plaintiff failed to sustain his burden of proving that he is financially or professionally damaged in any material respect by the exclusive contract method of operation of the Palo Alto Diagnostic X-ray Department at the defendant Hospital Center. Any restriction or detriment suffered by the plaintiff is incidental to the nature of the exclusive contract involved and is justified by the advantages which result therefrom to the benefit of patients, the medical staffs, the public and the Hospital Center." (And see "17" quoted above.) There is evidence which reflects that the special procedures are infrequently performed; that they are better performed by those who devote most of their time to hospital practice; that the carrying on of an office and hospital practice by an individual at the same time is economically unfeasible; that there

is no relationship between the business done in offices in the City of Palo Alto and the business which might flow to another radiologist participating in the hospital practice; and that such participation might lead to a reduction in office and overall revenue. It is also obvious that appellant cannot predicate his right to admission in any principle which would not give equal rights to all other qualified radiologists, and that such radiologists in the event of an open staff plan would have to give fixed time to the hospital to the detriment of their office practice. What the revenues and consequent damages might be is highly conjectural.

In conclusion, without attempting to determine what might ultimately be found to be the ideal situation for patients, attending physicians and diagnosing radiologists, it appears that the evidence supports the findings of the trial court, and that in the exercise of its discretion the respondent Hospital Center, by contract with the respondent Boice, Jones & Associates, and the latter with respondent clinic, established a diagnostic radiology facility as required by law in a reasonable mode and manner. Any exclusion of appellant is not as a matter of law unreasonable or arbitrary, but is justifiable in view of the ends to be accomplished, nor can the contracts be attacked as illegal.

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 11, 1965. Mosk, J., was of the opinion that the petition should be granted.