[No. B036731. Second Dist., Div. One. Feb. 28, 1989.]

MARSHALL E. REDDING et al., Plaintiffs and Appellants, v. ST. FRANCIS MEDICAL CENTER et al., Defendants and Respondents.

**COUNSEL**

Robert D. Walker and Russell Iungerich for Plaintiffs and Appellants.

Weissburg & Aronson, Kenneth M. Stern, Abbie P. Maliniak, O'Flaherty, Belgum & Prestholt, John J. Weber, Veatch, Carlson, Grogan & Nelson and C. Snyder Patin for Defendants and Respondents.

**OPINION**

**HANSON, J.**—Plaintiffs Marshall E. Redding, M.D., and John Mark Lawrence, M.D., filed a complaint against St. Francis Medical Center, a hospital and a not-for-profit corporation (hereinafter St. Francis), on July 7, 1988. Also named as defendants were Daughters of Charity, a not-for-profit corporation, Sridhara S.K. Iyengar, M.D., an individual, Sridhara S. K. Iyengar, M.D., Inc., a professional corporation, and Does.

The complaint, occasioned by a drastic change in St. Francis' heart surgery program, set forth six causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) negligence; (4) negligent interference with prospective economic advantage; (5) interference with present and prospective contractual rights and professional relationships; and (6) unfair competition. The complaint sought both monetary damages (compensatory and punitive) and injunctive relief.

On July 12, 1988, plaintiffs applied for a temporary restraining order; on that date the trial court issued such an order, pending a hearing on July 22, 1988. Following oral argument on July 22, 1988, the trial court made

findings of fact, declaring that it saw no basis for intervention in the internal affairs of St. Francis; it also ordered the temporary restraining order dissolved and denied plaintiffs' request for a preliminary injunction.

Plaintiffs immediately appealed to this court, and elected to proceed pursuant to California Rules of Court, rule 5.1, on an appendix in lieu of a clerk's transcript. A dismissal without prejudice was filed by plaintiffs as to defendant Daughters of Charity; demurrers filed on behalf of Sridhara S. K. Iyengar and his professional corporation were sustained without leave to amend in the trial court on November 8, 1988. On December 2, 1988, the demurrer filed on behalf of defendant St. Francis was also sustained by the trial court, with leave to amend within 20 days.

In November 1988, plaintiffs sought preferential setting of their appeal in this court. Their motion was denied on November 18, 1988. The trial court order denying plaintiffs injunctive relief is expressly made appealable, pursuant to Code of Civil Procedure section 904.1, subdivision (f), and we now consider it on the merits.

## STANDARD OF REVIEW

■ It is well established that the decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court, and may not be interfered with on appeal except for an abuse of that discretion. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889]). In order to find discretionary abuse, a reviewing court must determine that the trial court has " ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' " (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].)

Two interrelated factors must be evaluated by the trial court in making its decision: "[t]he first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued." (35 Cal.3d at pp. 69-70.)

## FACTUAL AND PROCEDURAL SUMMARY

Plaintiffs Marshall Redding, M.D., and John Mark Lawrence, M.D., are board certified in general surgery, thoracic surgery and cardiovascular surgery. Dr. Redding has been an active member of the staff of defendant hospital, St. Francis, since 1973, Dr. Lawrence since 1977. Until July 1988, the two plaintiff surgeons annually performed a majority of the cardiac

extracorporeal bypass surgeries (commonly known as heart bypass surgeries) which took place at defendant St. Francis. It is uncontroverted that Drs. Redding and Lawrence experienced success at these procedures, with a very low mortality rate.

Defendant St. Francis is a not-for-profit general acute care hospital sponsored by the Daughters of Charity of St. Vincent De Paul; it is licensed for 515 beds and is located in Lynwood, California. For at least two years prior to 1988, the executive committee of the medical staff of St. Francis had been concerned about the quality of bypass surgery at the hospital because of an unacceptably high mortality rate, 8.4 percent, for patients undergoing these procedures. Dr. Redding was a member of the executive committee in 1986 when this problem was being discussed by the committee.

Problems identified in the bypass surgery program included, in addition to the mortality rate, failure of cardiac surgeons to conduct peer review, inability to schedule needed surgeries, and unavailability of cardiac surgeons for needed backup, for handling emergencies and for giving follow-up care. Defendant St. Francis's medical executive committee determined that these identified problems resulted from the fact that a substantial number of independent surgeons were performing bypass surgery at not only St. Francis but other hospitals spread over a wide geographical area; this circumstance meant that these practitioners were often elsewhere when needed at St. Francis, thus creating an increased risk to St. Francis patients.

Defendant St. Francis decided to drastically change its heart surgery program, from the "open-staffing" structure it had operated under for a number of years to a "closed" exclusive program. The new program was to be directed by a highly qualified surgeon under contract to St. Francis and working with a fairly constant team of supportive personnel, i.e., perfusionists and nurses, etc. It was felt that this team approach would foster uniformity of high standards, teamwork, dedication and, most importantly, lower mortality rates. It was envisioned that the "closed" program would be an exclusive 24-hour a day arrangement, and would preclude use of hospital facilities by any bypass surgeons except the director of the program and surgeons working under the director. The contemplated change had wide support among the cardiologists who practiced at St. Francis.

The proposed change was openly discussed at St. Francis during early 1988. Both Drs. Redding and Lawrence refused to be the surgeons in charge of the new program because they did not wish to confine their practice to St. Francis alone, and did not want responsibility for quality control. They also refused to provide interim coverage for the bypass pro-

gram after a formal decision had been made by St. Francis to contract with one highly qualified individual to head the new structure.

On June 10, 1988, defendant hospital notified all of the bypass surgeons on its staff, including plaintiffs, that after July 18, 1988, they would not be able to perform independent bypass surgery at St. Francis. Defendant hospital had selected Sridhara S.K. Iyengar, M.D., to head up the new program. This litigation by plaintiffs followed.

### PRELIMINARY DISCUSSION

The relationship between physicians and hospitals has been the subject of considerable litigation in this state. In order to understand the contentions of the plaintiff physicians on appeal, we deem it necessary to discuss some of the decisional law which has evolved in recent years.

As long ago as *Willis* v. *Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568], a case involving the physician-hospital relationship, the California Supreme Court held that "[t]here is an established principle at common law that an action will lie where the right to pursue a lawful business, calling, trade, or occupation is intentionally interfered with either by unlawful means or by means otherwise lawful when there is lack of sufficient justification. [Citations.] Whether there is justification is determined not by applying precise standards but by balancing, in the light of all the circumstances, the respective importance to society and the parties of protecting the activities interfered with on one hand and permitting the interference on the other. [Citations.]"

Because of the common law right set forth above possessed by physicians and other health professionals, it has long been held in California that "neither a private nor public hospital may unreasonably or arbitrarily exclude a physician otherwise qualified from membership on its staff. [Citations.]" (*Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 391 [146 Cal.Rptr. 892].)

The California courts have protected physicians from unreasonable and arbitrary exclusion from hospital staffs. It was explained in *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 823 [140 Cal.Rptr. 442, 567 P.2d 1162], that " '[a]lthough the term "hospital privileges" connotes personal activity and personal rights may be incidentally involved in the exercise of these privileges, the essential nature of a qualified physician's right to use the facilities of a hospital is *a property interest which directly relates to the pursuit of his livelihood.*' " (Italics added.)

As *Lewin* v. *St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d 368, 391, noted, "most of the reported cases deal primarily with 'fair procedure' problems in relation to adjudicatory decisions." And in *Ezekial* v. *Winkley* (1977) 20 Cal.3d 267, 273-274 [142 Cal.Rptr. 418, 572 P.2d 32], our Supreme Court reiterated that "[a] hospital's staff membership decisions contain a similar potential for arbitrary impairment of the physician's right to engage in activities authorized by his license. 'It is common knowledge that a physician or surgeon who is not permitted to practice his profession in a hospital is as a practical matter denied the right to fully practice his profession. . . .'"

There is, however, a definite distinction in the case law between the intentional actions of a hospital directed specifically toward the exclusion of a particular physician or groups of physicians, and the actions of a hospital which may, as a practical matter, result in the exclusion of individual practitioners but were undertaken for less personally directed reasons. Cases in the first category have protected physicians; cases in the latter category have often balanced the equities in favor of the hospitals.

A number of California decisions have involved the same conflict of interests evident in the case at bench arising from a hospital's decision to maintain a "closed" staff rather than an "open" one, in particular medical specialties. In *Centeno* v. *Roseville Community Hospital* (1979) 107 Cal.App.3d 62, 73 [167 Cal.Rptr. 183], a Court of Appeal held that a hospital which had contracted for exclusive radiological services could not be held liable to an excluded radiologist for such action. Noting that a hospital could not unreasonably or arbitrarily exclude such professionals as plaintiff Centeno, the court nevertheless held that "a decision by a hospital [to contract in an exclusive manner for medical services] will not be set aside by the court unless it is substantively irrational, unlawful, contrary to established public policy, or procedurally unfair." Previous and contemporaneous appellate decisions have held the same. (See, e.g., *Lewin* v. *St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d 368; *Blank* v. *Palo Alto-Stanford Hospital Center* (1965) 234 Cal.App.2d 377 [44 Cal.Rptr. 572]; *Letsch* v. *Northern San Diego County Hosp. Dist.* (1966) 246 Cal.App.2d 673 [55 Cal.Rptr. 118].)

In addition, lower federal courts considering the claim that exclusive contracting for emergency services was unlawful have held that it was not, following a decision of the United States Supreme Court, *Jefferson Parish Hospital Dist. No. 2* v. *Hyde* (1984) 466 U.S. 2 [80 L.Ed.2d 2, 104 S.Ct. 1551], which declared that a hospital's exclusive contract for anesthesiology services did not give rise to a per se violation of the Sherman Anti-Trust Act.

Thus it may be seen that the "property right" of a physician in hospital staff privileges is subject to protection in some contexts but not in others. We now address the contentions of the plaintiff physicians on appeal.

CONTENTIONS ON APPEAL

On appeal, plaintiffs contend (not necessarily in the order stated here) that (1) the "property right" a physician has in staff membership is a vested right and cannot lawfully be taken away by a hospital's decision to function with a "closed" rather than "open" staff system; (2) the decisional law upholding a hospital's right to make an exclusive contract for medical services does not apply to the case at bench; (3) plaintiffs' sixth cause of action, for unfair competition, entitled them to injunctive relief pursuant to Business and Professions Code section 17070; (4) the hospital did not have the necessary powers of eminent domain required to divest plaintiffs of their vested property rights in their staff privileges at St. Francis; (5) the declarations made on behalf of defendant St. Francis in opposing plaintiffs' pursuit of a preliminary injunction establish that St. Francis's decision to make an exclusive contract for heart bypass surgery was neither necessary nor appropriate nor medically sound.

We address these contentions seriatim.

DISCUSSION

I.

Plaintiffs contend that over a period of years they devoted valuable professional time to developing a practice at St. Francis. Their practice thrived on professional associations with cardiologists and other health providers which produced a substantial number of referrals for heart bypass surgery. Plaintiffs claim that St. Francis could not in effect divest them of the results of their professional work by changing the hospital structure in a manner which would in effect destroy those results.

Plaintiffs rely heavily on the language of *Anton* v. *San Antonio Community Hosp., supra,* 19 Cal.3d 802, identifying hospital staff membership as a property right. They correctly point out, however, that *Anton* characterized staff membership as a property right *in the context* of determining the appellate standard of review for adjudicatory decisions resulting in the exclusion of a physician from a hospital staff.

In our view, the term "property right" must be viewed within the context of the issues being considered by a particular court. Plaintiffs claim that

their property rights in staff membership *vested* as the result of their years of participation at St. Francis, and cannot now be taken away. We do not accept this expansion of a right to be free of arbitrary exclusion from a hospital staff to a vested interest which precludes a hospital's ability to change its procedures and thus encroaches on a hospital's power to manage and control its legitimate business. *Anton* was not decided in such a context and was never intended to be viewed in this way. It would be highly detrimental to patient care and other identifiable social interests to hold that a hospital could not make reasonable management decisions to change its format, presumably for the purposes of improving it, without exposing itself to the claim that it was interfering with the vested interests of staff physicians.

This was a case where the traditional balancing of conflicting interests, as described in *Willis* v. *Santa Ana etc. Hospital Assn., supra,* 58 Cal.2d 806, was properly employed by the trial court, rather than one where vested property interests were involved. The trial court found the hospital's interest in improving patient care and, most significantly, reducing mortality rates outweighed the potential adverse economic impact on a group of doctors, including plaintiffs. The trial court was entitled to attach great importance to the public policy considerations involved, the societal, public interest in the best possible medical care. We agree with the trial court's determination.

## II.

Plaintiffs claim this is a case of first impression in California. They contend that the reported decisions upholding the right of a hospital to enter into exclusive contracts for medical services have not involved a situation where medical practitioners had, over a period of years, built up a practice based on "open" staffing privileges—and had then assertedly suffered detriment from a hospital's decision to change its internal structure. As we have pointed out, a physician does not have a vested interest in a hospital's maintenance of a particular internal structure, just as lawyers have no vested interest in courts functioning in a particular way.

We do not agree that this is a case of first impression. The precise factual situations in *Centeno, Lewin* and *Blank, supra,* may differ from the case at bench, but the ultimate issue in all these cases is the same, and the differences irrelevant. The rule of the previously decided cases applies here, and upholds the right of hospitals to make rational management decisions, even when exercise of that right might prove adverse to the interests of specific individual practitioners.

## III.

■ Plaintiffs contend that their claim of unfair competition, set forth in the sixth cause of action in their complaint, entitled them to have their request for injunctive relief adjudicated by less stringent standards.

Business and Professions Code section 17200 defines "unfair competition" as ". . . unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of Division 7 of the Business and Professions Code."

Since a substantial number of California decisions have upheld the right of a hospital to enter into an exclusive contract for medical services, defendant hospital's conduct was not unlawful. ■ An "unfair" business practice occurs ". . . when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (*People* v. *Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530 [206 Cal.Rptr. 164, 53 A.L.R.4th 661].) ■ Defendant hospital has not engaged in such a business practice, nor has it engaged in fraud. Defendant hospital's decision to contract exclusively with one qualified bypass surgeon was not undertaken for anti-competitive purposes; defendant hospital is not "in competition" with plaintiffs as that term is generally understood.

Therefore, plaintiffs were only entitled to the balancing process normally employed in determining the necessity for issuance of a preliminary injunction.

## IV.

We need not decide the nature and scope of defendant St. Francis's powers of eminent domain since we hold that defendant has not divested plaintiffs of property rights.

## V.

■ Plaintiffs finally contend that the decision by defendant hospital was flawed for a number of reasons. The record shows, however, that a number of St. Francis physicians and administrators executed declarations for review by the trial court in which they described in detail the problems defendant hospital had encountered in the bypass surgery program and the need for change. Those declarations are part of the record on appeal. They demonstrate that the trial court did not exercise its discretion in a vacuum

of information, but rather responded to the persuasive presentation made by the hospital. It is important, we believe, to remember that St. Francis is attempting to redress a problem area in its medical care, and that it may in the future, after experience, refine the new program or completely redefine the new program. Public policy compels this court to protect St. Francis's right to do just that in carrying out the purpose for which it has been established, without being "locked in" to a system which may no longer, at some point in time, meet current patient needs.

## DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Ortega, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 17, 1989.