[No. E007187. Fourth Dist., Div. Two. June 12, 1990.]

GARY BERGERON, Plaintiff and Respondent, v.
DESERT HOSPITAL CORPORATION, Defendant and Appellant.

COUNSEL

McDermott, Will & Emery, John M. Yamamoto and Donald A. Goldman for Defendant and Appellant.

Wood, Lucksinger & Epstein, David S. Richman, Eric J. Diamond and Ross W. Paulson for Plaintiff and Respondent.

OPINION

**McDANIEL, Acting P. J.**—Dr. Gary Bergeron (petitioner) filed a petition for a peremptory writ of mandate (Code Civ. Proc., § 1085) seeking to compel Desert Hospital Corporation (the hospital), a private, nonprofit hospital corporation, to set aside its summary decision suspending him from its emergency room call roster. The trial court granted the petition, and the hospital has appealed.

## BACKGROUND

Petitioner is a cardiologist who has been a member of the department of medicine at the hospital's facility in Palm Springs since 1978.

In March 1989, petitioner performed a cardiac catheterization in the hospital's cardiac catheterization laboratory on a patient who had been assigned to him through the hospital's emergency room call roster.[1] The patient was discharged the following day, and was later admitted to Eisenhower Medical Center in Rancho Mirage for an angioplasty.

According to the declaration of the hospital's chief executive officer, David Seeley (hereinafter Seeley): (1) the nursing staff told him, Seeley, that petitioner's stated reason for the patient's discharge was that the hospital did not do angioplasties or cardiovascular surgery; (2) at the time of the discharge, the hospital's cardiac catheterization laboratory was equipped to do angioplasties.

About two weeks after the discharge, Seeley wrote petitioner as follows: "Please be advised that your participation in the Emergency Room Call Roster at Desert Hospital is hereby suspended pending the completion of an investigation and institution of appropriate corrective action, if necessary, based on what we believe are inappropriate practices in the discharge of patients from this hospital and immediate readmission to Eisenhower Medical Center for angioplasty or cardiovascular surgery. Among the circumstances involved, we are informed that you have informed at least one patient that he must be discharged from this hospital because angioplasty or cardiovascular surgery services were not available.

"Concurrently with this letter I am requesting the medical staff to conduct its own investigation of this matter and the potential impact on patient care. This removal from participation in the Emergency Room Call Roster does not affect your exercise of clinical privileges at this time."

Petitioner challenged the suspension, on the ground that it was contrary to the hospital's medical staff bylaws. Seeley responded that participation on the emergency room roster was not governed by the bylaws, because such participation was a duty, rather than a right, of medical staff membership, and because such participation was not a clinical privilege.

Petitioner asked to address the medical staff executive committee at its next regular meeting. The request was denied. At that meeting, the

---

[1] The roster is used to assign physicians to persons who show up for treatment at the hospital's emergency room and who do not have physicians of their own.

committee appointed a subcommittee to investigate the grounds for the suspension, and recommended that petitioner's participation on the roster be reinstated pending completion of the investigation, with the condition that no unassigned emergency room patient who had undergone an invasive procedure could be transferred from the hospital for 23 hours and 59 minutes, unless requested in writing by the patient. Also at the meeting, a motion was brought that participation on the emergency room roster be designated a medical staff privilege, subject to the procedural rights set forth in the bylaws.[2] No one seconded the motion.

Petitioner also asked that he be allowed to make up the five days he had lost from participation on the roster during the suspension. Seeley told petitioner that he would delay a decision on that issue until after the investigation.

Then, before the investigation was over, petitioner filed a petition for a writ of mandate in the superior court, pursuant to Code of Civil Procedure section 1085. Petitioner alleged that: (1) his membership on the hospital's medical staff gave him the right to participate on the emergency room call roster; (2) such right had been expressly granted to him under article IV, section 5D of the hospital's bylaws,[3] and item 8 of the department of medicine's rules and regulations;[4] and (3) the summary suspension of his participation on the roster had been contrary to the bylaws and had deprived him of a vested property right without due process. Petitioner requested the court to issue a writ of mandate ordering the hospital to "remove without limitation the summary suspension of Petitioner's privileges."

Points and authorities, submitted in support of the petition, asserted, among other things, that: (1) over the past several years, he had derived a substantial portion of his income from participation on the roster; (2) during that period he had earned approximately $100,000 in fees from such participation, and (3) the suspension of such participation substantially limited his ability to practice his profession.

In an accompanying declaration, petitioner stated that the suspension had resulted in his having been denied "a substantial portion of [his] staff privileges at Desert Hospital."

The hospital filed a response to the petition, denying that petitioner, by virtue of his medical staff membership, was entitled to participate on the

---

[2] Article VIII, section 2A of the bylaws recites that a denial, reduction, suspension, or termination of privileges constitutes grounds for a hearing.

[3] Article IV, section 5D recites: "Members of the Active Staff shall be required to participate on the Emergency Room Call Roster as determined by the staff member's department."

[4] Item 8 recites, in relevant part: "Active Staff members of the Department will provide coverage in the Emergency Room on a rotational basis."

roster, and denying that participation on the roster was a fundamental right.

After a hearing, the trial court granted the petition and issued a peremptory writ ordering the hospital to set aside its decision to suspend petitioner from its emergency room call roster, and to restore to petitioner the five days of participation on the roster which had been denied to him. The judgment ordering the issuance of the writ recited, in relevant part: "Petitioner's participation on the Emergency Room Call Roster at Desert Hospital is a fundamental property right as defined in *Anton* v. *San Antonio Comm[unity] Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162] [see *post*] . . . . [¶] Petitioner was removed from the Emergency Room Call Roster without due process of law or fair procedure, contrary to Desert Hospital's by-laws."

This appeal followed.

## DISCUSSION

The hospital contends that participation on the emergency room call roster is not a fundamental property right which requires notice and a hearing before it is suspended. This is so, the hospital argues, because such participation is not a clinical privilege for which a staff member applies and is approved under the procedure outlined in article V of the hospital's bylaws, and because, under article VI of the bylaws, staff members may exercise only those clinical privileges specifically granted to them under article V.

However, Seeley's letter to petitioner advising him that he had been "suspended" from participation on the roster implies that such participation is a privilege, and not, as the hospital argues, solely a duty. If the participation were solely, or even predominantly, a duty, then petitioner would have been "relieved," rather than "suspended," therefrom.

Moreover, although participation on the roster is not an enumerated "clinical privilege" under either article V ("PROCEDURE FOR APPOINTMENT AND REAPPOINTMENT") or VI ("CLINICAL PRIVILEGES") of the hospital's bylaws, such participation is referred to as a "privilege" in article IV ("CATEGORIES OF MEDICAL STAFF") of the bylaws. Section 3D of article IV recites, in relevant part: "Emergency Room Call Roster *privileges* will be assigned when the monitoring requirement has been completed." (Italics added.)

Further, the issue of whether or not an attribute of staff membership is a property right should not depend on the label the hospital has attached

thereto, but whether, and to what extent, such attribute *benefits* the staff member. ■ Significantly, Black's Law Dictionary defines "privilege" as, among other things, "[a] particular and peculiar *benefit* or advantage enjoyed by a person, company, or class, beyond the common advantages of other citizens." (Black's Law Dict. (5th ed. 1979) p. 1077, col. 1, italics added.) ■ Here, petitioner's papers in support of his petition indicated that participation on the roster was a substantial benefit to him, and the hospital does not contend otherwise.

■ As the California Supreme Court said in *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal. 3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162]: "'the essential nature of a qualified physician's right to use the facilities of a hospital is a property interest which directly relates to the pursuit of his livelihood.' This interest is clearly fundamental. . . ." (*Id.*, at p. 823.) ■ Here, it is undisputed that petitioner's right to "use" the roster, i.e., to participate thereon, is directly related to the pursuit of his livelihood.

The hospital ignores *Anton*, despite the fact that the trial court expressly relied on that case in its judgment. Rather than attempt to distinguish *Anton*, the hospital argues that participation in the roster is not a right because it is a responsibility, and that "it is illogical to assume that every responsibility establishes an entitlement." However, although not every responsibility establishes an entitlement, when the responsibility is directly related to the pursuit of a livelihood, then, under *Anton*, an entitlement is established therefrom.

Both parties rely on *Redding* v. *St. Francis Medical Center* (1989) 208 Cal.App.3d 98 [255 Cal.Rptr. 806]. In that case, the defendant hospital, concerned about the high mortality rate in its cardiac bypass surgery program, had changed the "'open-staffing'" program to a "'closed'" program, and had notified all of its bypass surgeons that they would no longer be able to perform independent bypass surgery at the hospital. Two of the bypass surgeons filed a complaint against the hospital, seeking monetary damages and injunctive relief. In affirming the trial court's denial of injunctive relief, the *Redding* court reasoned, in relevant part:

"There is . . . a definite distinction in the case law between the intentional actions of a hospital directed specifically toward the exclusion of a particular physician or groups of physicians, and the actions of a hospital which may, as a practical matter, result in the exclusion of individual practitioners but were undertaken for less personally directed reasons. Cases in the first category have protected physicians; cases in the latter category have often balanced the equities in favor of the hospitals.

152

"₎   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . Plaintiffs claim that their property right in staff membership *vested* as the result of their years of participation at St. Francis, and cannot now be taken away. We do not accept this expansion of a right to be free of arbitrary exclusion from a hospital staff to a vested interest which precludes a hospital's ability to change its procedures and thus encroaches on a hospital's power to manage and control its legitimate business. . . .

"₎   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . As we have pointed out, a physician does not have a vested interest in a hospital's maintenance of a particular internal structure . . . [¶] . . . even when [changes to that structure] might prove adverse to the interests of specific individual practitioners." (208 Cal.App.3d at pp. 104-106, italics in original.)

In the case here, the hospital argues that Seeley's decision to suspend petitioner's participation on the roster, like the decision of St. Francis Medical Center in *Redding* to change its bypass surgery program, is merely a "management decision" affecting an aspect of the hospital's operation in which petitioner has no vested property interest. Petitioner, for his part, argues that his suspension from the roster falls within the category of actions which the *Redding* court described as "intentional actions of a hospital directed specifically toward the exclusion of a particular physician." We agree with petitioner.

Petitioner is correct on this point because his suspension was not part of a change in the hospital's emergency room procedures which incidentally affected him, but was an isolated action designed specifically to effect his exclusion. Accordingly, it is the sort of situation in which, as the *Redding* court noted, courts have protected physicians.

In view of all the foregoing, we hold, in the circumstances of the case here, that petitioner's participation on the hospital's emergency room call roster is a fundamental property right which cannot be suspended or revoked without notice and a hearing.[5] Accordingly, because the hospital had a clear, present, and ministerial duty to set aside its suspension of petitioner from the roster, and because petitioner had a clear, present, and beneficial right to performance of that duty, the trial court properly issued

[5] As noted, the hospital contended that notice and a hearing were not required because the participation was not a fundamental property right. Impliedly, therefore, notice and a hearing are required if the participation is a fundamental property right.

the writ of mandate. (Code Civ. Proc., § 1085; *Taylor* v. *Board of Trustees* (1984) 36 Cal.3d 500, 507 [204 Cal.Rptr. 711, 683 P.2d 710].)[6]

DISPOSITION

The judgment ordering issuance of the writ is affirmed.

Dabney, J., and Timlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 30, 1990. Panelli, J., was of the opinion that the petition should be granted.

---

[6]The hospital does not challenge the portion of the writ ordering the hospital to restore to petitioner the five days' participation in the roster which had been denied to him.