[No. G036080. Fourth Dist., Div. Three. June 14, 2006.]

INTEGRATED HEALTHCARE HOLDINGS, INC., Plaintiff and Respondent, v.
MICHAEL FITZGIBBONS, Defendant and Appellant.

516

COUNSEL

Bond Curtis, Tom Curtis and Alexander W. Kirkpatrick for Defendant and Appellant.

Catherine I. Hanson and Gregory M. Abrams for California Medical Association and American Medical Association as Amici Curiae on behalf of Defendant and Appellant.

McNeil, Tropp & Braun, Yolita Nowak Lecellier, Jeff I. Braun and Deborah S. Tropp for Plaintiff and Respondent.

## Opinion

**ARONSON, J.**—Defendant Michael Fitzgibbons appeals the trial court's denial of his special motion to strike brought under the anti-SLAPP statute[1] (Code Civ. Proc., § 425.16).[2] Fitzgibbons contends an e-mail message he sent questioning the financial condition of plaintiff Integrated Healthcare Holdings, Inc. (IHHI), concerned a matter of public interest under section 425.16, subdivision (e)(4), and that IHHI failed to demonstrate a probability of prevailing on the merits of its claims for defamation, breach of contract, tortious interference, and violations of Business and Professions Code section 17200 et seq. We agree with these contentions and reverse the trial court's order.

## I

### Factual and Procedural Background

In 2004, Tenet Healthcare Corporation sought to divest itself of a number of California hospitals it owned, including four in Orange County. Among those seeking to purchase the Orange County hospitals was IHHI, a holding company formed for this purpose. As its president concedes, IHHI is a "heavily debt leveraged" company "trying to develop sufficient cash flow to survive in a difficult healthcare market." Because of concerns about IHHI's financial ability to operate the four hospitals, the County of Orange and the California Senate conducted public hearings on the proposed acquisitions.

Among the hospitals IHHI sought to purchase was Western Medical Center—Santa Ana (WMC), a 282-bed acute care facility and one of only three trauma centers in Orange County. WMC's medical staff opposed IHHI's acquisition of WMC due to concerns about both IHHI's financial stability and its principal, Dr. Kali P. Chaudhuri, who had been involved in the failure of a previous healthcare company. One of the medical staff opposing IHHI's purchase was Fitzgibbons, a member of the medical staff's medical executive committee and WMC's former chief of staff.

---

[1] SLAPP is an acronym for strategic lawsuit against public participation, first coined by two University of Denver professors. (See Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions* (1990–1991) 27 Cal. Western L.Rev. 399.)

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

The medical staff dropped its opposition to the purchase when they entered into a written agreement with IHHI, effective January 1, 2005. Under the three-year contract, WMC's medical staff received significant financial oversight of WMC's operations, and Dr. Chaudhuri agreed to limit his interest in IHHI to a minority share. The agreement also assured WMC that IHHI had "a lender commitment for a working capital line of credit loan in the approximate aggregate amount of $50 Million, to be available to the Hospital no later than ten (10) days following the closing of the purchasing parties' acquisition of the Hospitals."

Under the heading, "Consideration," the agreement provided: "The Parties further agree that this Agreement will be submitted to [the Department of Health Services] as part of the Hospital's license application process. In consideration for the binding and enforceable commitments of IHHI, and in reliance upon these commitments, the Medical Staff of Western Medical Center—Santa Ana will express public support for the acquisition and operation of IHHI of, and issuance of hospital licenses to IHHI for, the Hospitals, in accordance with the commitments made herein, including being represented at any public hearings on this proposed acquisition and delivering to DHS (Mark Helmar) a letter supporting IHHI's acquisition and licensure of the Hospitals."

IHHI's acquisition and licensing of the hospitals was completed in March 2005. On May 9, 2005, the lender on IHHI's $50 million acquisition loan, and a $30 million nonrevolving working capital line of credit, served IHHI with a notice of default. The default was disclosed in IHHI's filing with the Securities Exchange Commission (SEC), and reported in an article in the May 17, 2005, Orange County Register, which cited an analyst's warning that IHHI needed to "find another investment partner 'really quickly' or the whole thing could be headed for bankruptcy court."

Two days after the article appeared, Fitzgibbons sent an e-mail message to medical executive committee members and other individuals Fitzgibbons believed might offer financial assistance to the hospital, expressing concern IHHI could be headed for bankruptcy. The e-mail stated: "By the way, the hospital appears to be underwater and I don't think IHHI can get an investor to pony up the $20 million, for the 60–70 million shares of stock which they are selling. Admissions are down 20%. They got a reduction of costs by dumping Tenet by 13%, and increased insurance payment of 7% (but that is neutralized by the factoring). Then their nursing salaries went up 8%—so they're in the red. No way to get out. That is ominous. What would the buyer get buying IHHI stock? Control of IHHI, but not the land? Sounds like its going BK. Get ready. [¶] Now, if the doctors had been in the deal . . . interest rates would have been better say 9%??, would have had our capital say $10

million, and admissions would have been even. Result happiness. Sad. [¶] It might work if they came to us on hands and knees and gave us the stock in exchange for our telling the world we support them, and get a refinance at a better rate??? Who would lend? Ligon's the CFO's family supposedly has money. [¶] The loan default is classic 'chaudhuri.' I guess Mr. Mogel won't be pooring [*sic*] expensive brandy on the table today. [¶] Mike Fitzgibbons."

On June 23, 2005, IHHI filed a complaint against Fitzgibbons based on his May 19 e-mail message, seeking damages for (1) defamation; (2) intentional interference with a contractual relationship; (3) negligent interference with a contractual relationship; (4) breach of contract; (5) breach of the duty of good faith and fair dealing; and (6) violation of Business and Professions Code section 17200 et seq. The complaint alleges Fitzgibbons's e-mail message was forwarded to Blue Cross/Wellpoint, Inc., (Blue Cross), which had been negotiating with IHHI for higher insurance payments, and the e-mail message provoked concern on the part of Blue Cross, stalling negotiations. IHHI alleges this delay has cost it over $500,000.

Fitzgibbons filed a special motion to strike under the anti-SLAPP statute, which the trial court denied. Fitzgibbons now appeals.

## II

### STANDARD OF REVIEW

An order denying an anti-SLAPP special motion to strike is appealable under sections 425.16, subdivision (i), and 904.1. We review the order de novo. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [13 Cal.Rptr.2d 625].)

## III

### DISCUSSION

#### A. *Fitzgibbons Has Met His Burden of Demonstrating the May 19 E-Mail Message Concerned "an Issue of Public Interest"*

The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An act in furtherance of the right of free speech

includes "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The anti-SLAPP statute arose from the Legislature's recognition that SLAPP suit plaintiffs are not seeking to succeed on the merits, but to use the legal system to chill the defendant's first amendment right of free speech. (*Liu v. Moore* (1999) 69 Cal.App.4th 745 [1 Cal.Rptr.2d 807].) Thus, the statute notes: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." (§ 425.16, subd. (a).)

■ To prevail on an anti-SLAPP motion, the movant must first make " 'a threshold showing that the challenged cause of action' arises from an act in furtherance of the right of petition or free speech in connection with a public issue." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [5 Cal.Rptr.3d 298, 106 P.3d 958].) Once the movant meets this burden, the plaintiff must demonstrate " 'a probability of prevailing on the claim.' " (*Ibid.*) If the plaintiff cannot meet this burden, the trial court must strike the cause of action. (*Ibid.*)

Section 425.16, subdivision (e), clarifies what speech is covered by the statute: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Fitzgibbons contends his e-mail message falls within both clauses (2) and (4) of section 425.16, subdivision (e).

■ We have little trouble concluding Fitzgibbons's e-mail message concerned "a public issue" and "an issue of public interest" under section 425.16, subdivision (e)(4). IHHI's acquisition and operation of four Orange County hospitals was the subject of public hearings held by both the California Senate and the Orange County Board of Supervisors, and discussed in numerous articles in newspapers and other periodicals. The hearings and articles focused on IHHI's financial ability to successfully operate the hospitals, and the potential harm to the public should IHHI fail. Fitzgibbons's e-mail message expressing concern for IHHI's financial health and its ability to operate WMC falls squarely within these issues.

Citing *Zhao v. Wong* (1996) 48 Cal.App.4th 1114 [55 Cal.Rptr.2d 909], IHHI contends the e-mail did not concern a public issue because it did not relate to "the exercise of democratic self-government." (*Id.* at p. 1122.) IHHI's reliance on *Zhao* is misplaced, however, because its discussion of the anti-SLAPP statute's scope has been superseded by the 1997 amendments to section 425.16. (See *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 236 [83 Cal.Rptr.2d 677] ["the Senate Judiciary Committee expressly amended section 425.16 to mandate a broad interpretation of the statute in reaction to the over-narrow interpretation of *Zhao v. Wong*"].) Indeed, the California Supreme Court expressly disapproved *Zhao* on the very point for which IHHI cites it. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116 [81 Cal.Rptr.2d 471, 969 P.2d 564] ["We agree . . . that '*Zhao* is incorrect in its assertion that the only activities qualifying for statutory protection are those which meet the lofty standard of pertaining to the heart of self-government' "].)

■ "The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. [Citations.] ' "[M]atters of public interest . . . include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." ' " (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 [102 Cal.Rptr.2d 205].) Although IHHI asserts it is "a small corporate entity" that is "heavily debt leveraged," its ownership and operation of four Orange County hospitals makes it large and powerful enough to impact the healthcare needs of the county's residents.

IHHI also notes the public hearings on IHHI's acquisition and operation of the four hospitals had ended months before Fitzgibbons sent the e-mail, making the issues involved in the hearings "moot." IHHI asserts its SEC filing and newspaper article reporting on the lender's default notice did not create a new public issue.

IHHI relies on *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107 [1 Cal.Rptr.3d 501] (*Du Charme*), and *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913 [130 Cal.Rptr.2d 81] (*Rivero*). *Du Charme* held a statement posted on a labor union's local Web site announcing that the local's business manager had been removed because of financial mismanagement did not concern a public issue or issue of public interest within section 425.16, subdivision (e)(4). In reaching this conclusion, the court determined "in order to satisfy the public issue/issue of public interest requirement of section 425.16, subdivision (e)(3) and (4) of the anti-SLAPP statute, in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Du Charme,* at p. 119.) *Du Charme* rejected the defendant's attempt to invoke the anti-SLAPP statute because the Web site statement was "unconnected to any discussion, debate or controversy" then existing. (*Id.* at p. 118.)

*Du Charme* contrasted its situation involving union members with matters "of *widespread* public interest," providing as examples of the latter, increased traffic and natural drainage impacts of a proposed mall, a television show that generated considerable media debate, and issues concerning domestic violence and child molestation. (*Du Charme, supra,* 110 Cal.App.4th at p. 117.) The court noted such matters involve " 'private conduct [which] . . . impacts a broad segment of society . . . .' " (*Ibid.*)

We have no difficulty placing the financial survival of four hospitals within the county into the category of "*widespread* public interest," and thus not subject to the "ongoing controversy" rule enunciated in *Du Charme*.[3] Thus, *Du Charme* provides no support to IHHI's position.

In *Rivero,* a demoted supervisor sued former subordinates and a union over statements accusing him of abuse, theft, and extortion. The union contended its statements concerned an issue of public interest because they related to " 'abusive supervision of employees throughout the University of California

---

[3] Moreover, even if we applied *Du Charme*'s "ongoing controversy" rule, the e-mail would still relate to an issue of public concern. Although IHHI's acquisition itself may have been a dead issue when the e-mail was sent, the body was not yet cold. The public hearings and articles centered on IHHI's financial ability to operate the hospitals and the impact IHHI's failure would have on the public's access to health care. The default, touching squarely upon IHHI's financial health, occurred just two months after IHHI's acquisition of the hospitals, and was the immediate subject of a newspaper article. Fitzgibbons's e-mail message just two days after the article's publication was not remote in time.

system [which] impacts a community of public employees numbering 17,000." (*Rivero, supra,* 105 Cal.App.4th at p. 919.) The union also contended its communications concerned a public issue because plaintiff's purported wrongdoing occurred at a publicly financed institution. (*Ibid.*) Rejecting the union's contentions, *Rivero* viewed the statements as relating primarily to the plaintiff and eight employees. The court noted that it accepted the union's contentions, every workplace dispute would qualify as a matter of public interest.

■ We have interpreted *Rivero* as outlining three general categories of cases falling within subdivision (e)(4) of section 425.16: "(1) The subject of the statement or activity precipitating the claim was a person or entity in the public eye. [Citations.] [¶] (2) The statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants. [Citations.] [¶] (3) The statement or activity precipitating the claim involved a topic of widespread public interest. [Citations.]" (*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 33 [1 Cal.Rptr.3d 390].) Here, each of these three criteria has been met. Accordingly, *Rivero* also provides IHHI no support.

Finally, IHHI contends the anti-SLAPP statute does not apply to the challenged e-mail because Fitzgibbons was IHHI's competitor, and therefore the e-mail fell into the category of unprotected commercial speech.[4] Specifically, IHHI introduced evidence that Fitzgibbons belonged to an entity called Western Medical Center Acquisition, LLC (WMCA), formed to purchase WMC. Tenet Healthcare rejected WMCA's offer, and later accepted IHHI's. In support of its argument, IHHI relies on *MCSi, Inc. v. Woods* (N.D.Cal. 2003) 290 F.Supp.2d 1030 (*MCSi*) and *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 [15 Cal.Rptr.3d 215] (*Mann*).

In *MCSi,* a federal court formulated a rule that statements by a commercial competitor about the competition are not matters of public interest. (*MCSi, supra,* 290 F.Supp.2d at p. 1034.) The only basis for this rule, however, stemmed from the same court's earlier ruling in *Globetrotter Software, Inc. v. Elan Computer Group, Inc.* (N.D.Cal. 1999) 63 F.Supp.2d 1127, 1129 (*Globetrotter*) in which the court relied on the *lack* of any California case law addressing the issue as support for its decision.[5]

---

[4] In making this argument, IHHI notes the e-mail was sent to only a small number of people. As we recognized in *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1470, fn. 5 [37 Cal.Rptr.3d 133] (*Ruiz*), subdivision (e)(4), applies to private communications concerning public issues.

[5] *Globetrotter* reasoned: "The Court has been unable to locate any California cases concluding that the 'issue of public interest' test is met by statements of one company regarding the conduct of a competitor company. If such statements were construed as coming

Although in most cases a competitor's statements regarding its competition would not fall within section 425.16, subdivision (e)(4), we decline to adopt a per se rule excluding all competitor's statements from anti-SLAPP protection. Instead, we must consider each case in light of its own unique facts. This was the approach taken in *Mann, supra,* 120 Cal.App.4th 90, in which the defendants were alleged to have solicited the customers of a former employer with false statements that the former employer used toxic chemicals. After considering the facts surrounding the communications at issue, the court rejected the defendants' contention their speech concerned a public issue because "they presented no argument or evidence that [their former employer] is an entity in the public eye." (*Id.* at p. 111.) In the present case, however, IHHI was very much in the public eye at the time Fitzgibbons sent his e-mail missive.

Further, to the extent Fitzgibbons's activities with WMCA prior to IHHI's purchase of the hospitals made him IHHI's competitor, this competition ended when Tenet accepted IHHI's offer, months before Fitzgibbons sent the e-mail. Moreover, Fitzgibbons's membership in the medical staff's medical executive committee at WMC does not make him a "competitor" of IHHI. (See *Redding v. St. Francis Medical Center* (1989) 208 Cal.App.3d 98, 107 [255 Cal.Rptr. 806] [hospitals and doctors are not in competition with each other].)

Because we conclude the challenged e-mail manifestly concerned a public issue, we need not decide whether it concerned an issue under consideration or review by a legislative, executive, or judicial body, under section 425.16, subdivision (e)(2).

### B. *IHHI Has Not Established a Probability of Prevailing on Any of Its Claims*

Having determined Fitzgibbons met his burden of demonstrating his e-mail message fell within the anti-SLAPP statute, the burden now shifts to IHHI to demonstrate a probability of prevailing on its claims.

---

within the statute's protection, any lawsuit alleging trade libel, false advertising or the like in the context of commercial competition would be subject to attack as a SLAPP suit. This clearly is not the result intended by the Legislature when enacting the anti-SLAPP statute. Accordingly, in the absence of clear California case law to the contrary, this Court declines to apply the statute's protection to the speech at issue in this case." (*Globetrotter, supra,* 63 F.Supp.2d at p. 1130.)

■ To establish a probability of prevailing, the plaintiff " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) In doing so, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. (*Ibid.*) Although "the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Ibid.*) Moreover, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786].) With these standards in mind, we now address each of IHHI's claims.

### 1. *Defamation*

Civil Code section 45 provides: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Fitzgibbons contends his May 19 e-mail message is not actionable because it consists of only his opinion, and not factual assertions. IHHI, on the other hand, asserts that opinions and criticism may be actionable even though they are based on true statements of fact. Neither paints an accurate picture of the law.

■ In determining whether disparaging remarks are actionable defamation, " 'the question is not strictly whether the published statement is fact or opinion . . . [r]ather, the dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.' [Citation.]" (*Ruiz, supra,* 134 Cal.App.4th at p. 1471.) In other words, an opinion or legal conclusion is actionable only " ' "if it could reasonably be understood as declaring or implying actual facts capable of being proved true or false." ' [Citation.] Thus, an opinion based on implied, undisclosed facts is actionable if the speaker has no factual basis for the opinion. [Citation.] An opinion is not actionable if it discloses all the statements of fact on which the opinion is based and those statements are true. [Citation.] An opinion is actionable if it discloses all the statements of fact on which the opinion is based and those statements are false. [Citation.]" (*Ibid.*)

In *Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375 [10 Cal.Rptr.3d 429] (*Franklin*), we contrasted opinions based upon expressly stated facts from opinions based on implied, undisclosed facts: " 'The statement, "I think Jones is an alcoholic," for example, is an expression of opinion based on implied facts, [citation], because the statement "gives rise to the inference that there are undisclosed facts that justify the forming of the opinion," [citation]. Readers of this statement will reasonably understand the author to be implying he knows facts supporting his view—*e.g.,* that Jones stops at a bar every night after work and has three martinis. If the speaker has no such factual basis for his assertion, the statement is actionable, even though phrased in terms of the author's personal belief.' [Citation.]" (*Id.* at p. 387.)

■ An expression of opinion based on express facts would be: " ' "[Jones] moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair . . . with a drink in his hand. I think he must be an alcoholic." [Citation.]' [Citation.] This opinion disclosed all the facts on which it was based and did not imply there are other, unstated facts supporting the belief Jones is an alcoholic. The opinion that Jones ' "must be an alcoholic" ' is actionable only if the disclosed facts are false and defamatory. 'A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning.' [Citation.] The rationale for this rule is that '[w]hen the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts.' [Citation.] When the facts supporting an opinion are disclosed, 'readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts.' [Citations.]" (*Franklin, supra,* 116 Cal.App.4th at p. 387.)

■ When determining whether a statement of opinion is actionable "we examine the totality of the circumstances, starting with the language of the allegedly defamatory statement itself." (*Ruiz, supra,* 134 Cal.App.4th at p. 1471.) The first paragraph of Fitzgibbons's e-mail message reads: "By the way, the hospital appears to be underwater and I don't think IHHI can get an investor to pony up the $20 million, for the 60–70 million shares of stock which they are selling. Admissions are down 20%. They got a reduction of costs by dumping Tenet by 13%, and increased insurance payment of 7% (but that is neutralized by the factoring). Then their nursing salaries went up 8%—so they're in the red. No way to get out. That is ominous. What would the buyer get buying IHHI stock? Control of IHHI, but not the land? Sounds like its going BK. Get ready."

IHHI contends the opinions expressed in this portion of the e-mail—the hospital is "underwater," IHHI is unable to find investors to purchase its stock, and it is going bankrupt—are false and actionable libel. This portion of the e-mail, however, sets forth the basis for these opinions and does not imply other facts. Specifically, these opinions appear based on the following facts: "Admissions are down 20%. They got a reduction of costs by dumping Tenet by 13%, and increased insurance payment of 7% (but that is neutralized by the factoring). Then their nursing salaries went up 8% . . . ." Because the e-mail discloses the facts underlying Fitzgibbons's opinions, the opinions are actionable only if these facts are false. IHHI challenges only one of the underlying facts, that "[a]dmissions are down 20%."

In its brief, IHHI argues that Fitzgibbons bears the burden of proving the truth of the statements in his e-mail message, and that "[t]his burden is shifted to the plaintiff *only* if the plaintiff is a public figure, which in this case, IHHI is not." For this proposition, IHHI cites *Philadelphia Newspapers, Inc. v. Hepps* (1986) 475 U.S. 767 [89 L.Ed.2d 783, 106 S.Ct. 1558] (*Hepps*). IHHI apparently did not read *Hepps* closely because the Supreme Court in *Hepps* held that the burden to prove falsity shifts to the plaintiff when the statement relates to an issue of public concern, even when the plaintiff *is not* a public figure. (*Id.* at p. 777.) True, *Hepps* applied the burdenshifting to a situation involving a media defendant. But California has since applied *Hepps* to cases involving nonmedia defendants. (*Nizam-Aldine v. City of Oakland* (1996) 47 Cal.App.4th 364, 377 [54 Cal.Rptr.2d 781]; see also *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 747 [257 Cal.Rptr. 708, 771 P.2d 406] ["When the speech involves a matter of public concern, a private-figure plaintiff has the burden of proving the falsity of the defamation"].) Because we have determined the e-mail at issue related to an issue of public concern, IHHI bears the burden of demonstrating the challenged statements are false.

In challenging the e-mail's assertion that "[a]dmissions are down 20%," IHHI cites two one-page reports covering, respectively, April and May of 2005. These reports purport to show the number of inpatient and outpatient surgeries performed, and the revenues generated from them. IHHI asserts these reports show WMC to be above budget for these two months. This evidence fails to establish the challenged statement is false.

Specifically, IHHI provides no evidence of how the budget was created or its relation to past events. Indeed, IHHI may have adjusted its budget prior to the reports to take into account a 20 percent drop in admissions. Moreover, the reports relate only to revenues received from surgeries; unless all patient

admissions are for surgery, a proposition unsupported by any evidence, the reports cannot provide an accurate picture about admissions. Thus, IHHI has failed to prove the facts underlying the challenged opinions are false.

Moreover, even if we were to construe the e-mail's assertion that IHHI is going bankrupt as implying undisclosed facts, it would still not constitute actionable libel because IHHI has failed to provide competent evidence that it was not headed toward bankruptcy at the time Fitzgibbons sent his e-mail. The reports cited by IHHI show only the revenue from surgeries from one hospital for two months, but fail to provide any information on expenses, cash flow, assets, debts, etc. In addition to the reports, IHHI also cites a financial statement IHHI filed on June 8, 2005, as evidence it was not close to bankruptcy. IHHI's brief, however, does not cite to any particular part of the filing and, based on our review of the document, we discern nothing germane to IHHI's potential for declaring bankruptcy at the time it was filed.[6]

We are inclined to allow the plaintiff in a SLAPP motion a certain degree of leeway in establishing a probability of prevailing on its claims due to "the early stage at which the motion is brought and heard [citation] and the limited opportunity to conduct discovery [citation]." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446], disapproved on other grounds by *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Nonetheless, we must presume IHHI had evidence of its own financial condition. Consequently, we will not engage in a leap of faith that, despite its inadequate evidentiary showing in opposition to the special motion to strike, IHHI will present substantial evidence supporting its defamation claim at trial.

Having concluded IHHI failed to demonstrate anything in the e-mail's first paragraph constitutes actionable liable, we now turn to the second, which reads: "Now if the doctors had been in the deal . . . interest rates would have been better say 9%??, would have had our capital say $10 million, and admissions would have been even. Result happiness. Sad." IHHI does not contend any of the factual assertions in this paragraph are false. Accordingly, it is not actionable defamation.

 Finally, the e-mail's last two paragraphs read: "It might work if they came to us on hands and knees and gave us the stock in exchange for our telling the world we support them, and get a refinance at a better rate??? Who would lend? Ligon's the CFO's family supposedly has money. [¶] The loan default is classic 'chaudhuri.' I guess Mr. Mogel won't be pooring [*sic*]

---

[6] We deny Fitzgibbons's request for judicial notice of a Los Angeles Times newspaper article.

expensive brandy on the table today." Although the statements in this portion of the message are undeniably derisive, they are not actionable defamation. Satirical, hyperbolic, imaginative, or figurative statements are not actionable because " 'the context and tenor of the statements negate the impression that the author seriously is maintaining an assertion of actual fact.' " (*Franklin, supra,* 116 Cal.App.4th at p. 385.) Because IHHI failed to meet its burden of demonstrating a probability of success on its defamation cause of action, it must be stricken.

### 2. *Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing*

IHHI contends Fitzgibbons waived his right to complain about IHHI's operation of WMC when he executed the agreement between the medical staff and IHHI, and that his e-mail message therefore breached the contract. We disagree.

" ' "A waiver of First Amendment rights may only be made by a 'clear and compelling' relinquishment of them. . . ." [Citation.] "Moreover, it is well established that courts closely scrutinize waivers of constitutional rights, and indulge every reasonable presumption against a waiver.' [Citations.]" ' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 532 [132 Cal.Rptr.2d 151].)

The clause IHHI relies upon reads: "[T]he Medical Staff of Western Medical Center—Santa Ana will express *public* support for the acquisition and operation of IHHI of, and issuance of hospital licenses to IHHI for, the Hospitals, in accordance with the commitments made herein, including being represented at any public hearings on this proposed acquisition and delivering to DHS (Mark Helmar) a letter supporting IHHI's acquisition and licensure of the Hospitals." (Italics added.) IHHI provides no evidence demonstrating the medical staff did not fulfill their requirements to express support at the hearings on IHHI's acquisition of the hospitals, or send a letter to the Department of Health Services supporting IHHI. Rather, IHHI contends the legal staff's promise to "express public support for the acquisition and operation of IHHI" prohibited Fitzgibbons from making any negative comments during the three-year term of the agreement.

As an initial matter, we note that Fitzgibbons did not send out his e-mail message publicly, but only to a limited number of recipients. Accordingly, the e-mail did not violate the express provisions of the agreement. More importantly, however, the phrase "express public support for the acquisition and

operation of IHHI" is not sufficiently clear and definite on its face to imply a waiver of Fitzgibbons's First Amendment rights, and IHHI fails to provide any evidence Fitzgibbons expressed an understanding he relinquished all right to criticize IHHI or its operation of WMC when he signed the agreement.

Indulging every reasonable presumption against a waiver of First Amendment rights, we conclude IHHI failed to demonstrate a reasonable probability of prevailing on its breach of contract cause of action. Similarly, because courts will not imply a waiver of free speech rights, IHHI's cause of action for breach of the implied covenant of good faith and fair dealing must also be stricken.

### 3. *Interference With Contract*

IHHI alleges Fitzgibbons's e-mail was forwarded to Blue Cross during the time IHHI was attempting to renegotiate an increase in rates with Blue Cross. IHHI provided evidence that Blue Cross expressed concern about IHHI's financial condition after receiving the e-mail, and due to that concern delayed executing a contract for higher rates. IHHI contends this delay has resulted in damages exceeding $500,000.

Establishing a prima facie case of intentional interference with contractual relations requires proof of "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587].) IHHI contends it has provided evidence sufficient to establish each of these elements. We disagree.

In support of this claim, IHHI cites the declaration of Mario Rodriguez, a business consultant negotiating with Blue Cross on IHHI's behalf for higher rates. The declaration does not state who forwarded Fitzgibbons's e-mail message to Blue Cross, and IHHI presented no evidence demonstrating Fitzgibbons intended to send, either personally or through an agent, the e-mail to Blue Cross. The only evidence IHHI cited concerning intent are the disparaging remarks Fitzgibbons made in his e-mail and Fitzgibbons's mem-

bership in a group that competed with IHHI for the purchase of WMC. This evidence may show Fitzgibbons's distain for IHHI, but fails to demonstrate he intended to disrupt IHHI's negotiations with Blue Cross.

We recognize the evidence may support an inference of " 'culpable intent from conduct "substantially certain" to interfere with the contract [or prospective economic relationship].' " (*Savage v. Pacific Gas & Electric Co.* (1993) 21 Cal.App.4th 434, 449 [26 Cal.Rptr.2d 305].) IHHI has failed to provide any evidence demonstrating a substantial certainty that Fitzgibbons's e-mail message would reach Blue Cross. Indeed, the copy of the message received by Blue Cross indicates it was sent to them from an e-mail address that was not one of the original recipients.

In addition to protection against acts intentionally designed to interfere with contractual relations, the law also protects against injury caused by negligence. (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].) IHHI, however, cites no evidence demonstrating negligence by Fitzgibbons in sending his e-mail message. As noted above, we do not construe the agreement between IHHI and the medical staff as imposing a duty on Fitzgibbons to refrain from criticizing IHHI, and nothing indicates he intended to forward the message to Blue Cross.

Finally, we note IHHI's interference with contract claims also fail because it presented no evidence demonstrating any breach or disruption of its existing contract with Blue Cross. Instead, IHHI demonstrated interference with its negotiations for a new Blue Cross contract. Thus, the wrong of which IHHI complains is interference with prospective economic advantage, a tort not pleaded in its complaint. Even if it had been pleaded, however, IHHI failed to establish the interference was wrongful apart from the interference itself, a required element of that tort. (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1152 [17 Cal.Rptr.3d 289, 95 P.3d 513].)

### 4. *Unfair Business Practices Act, Business and Professions Code Section 17200*

IHHI seeks injunctive relief under the Unfair Business Practices Act, Business and Professions Code section 17200. This cause of action arises out of Fitzgibbons's alleged defamation of IHHI in his e-mail message. Because we conclude the message did not constitute actionable defamation, IHHI's action for violation of the Unfair Business Practices Act also fails for this reason.

## IV

### DISPOSITION

The order denying Fitzgibbons's special motion to strike is reversed, and the trial court is directed to enter a new order granting the motion in its entirety. Fitzgibbons is entitled to his costs on appeal.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.