Filed 1/29/14  Retirement Housing Foundation v. Cain Brothers CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RETIREMENT HOUSING FOUNDATION, et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CAIN BROTHERS & CO.,<br><br>    Defendant and Respondent. | B239439<br><br>(Los Angeles County<br>Super. Ct. No. BC404726)<br><br>**ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on December 30, 2013, and not certified for publication, be modified as follows:

On page 12, line 1 of the first paragraph, the opinion incorrectly refers to section 10(b); it should be section 10(a).

Appellants' petition for rehearing is denied.  The foregoing does not change the judgment.

_____

**WOODS, Acting P. J.**            **SEGAL, J. (Assigned)**

Filed 12/30/13 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RETIREMENT HOUSING FOUNDATION, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CAIN BROTHERS & CO., <br><br> Defendant and Respondent. | B239439 <br><br> (Los Angeles County <br> Super. Ct. No. BC404726) |

APPEAL from an order of the Superior Court of Los Angeles County. William F. Highberger, Judge. Affirmed.

Reuben Raucher & Blum, Timothy D. Reuben, Stephen L. Raucher and Gregory P. Barchie for Plaintiffs and Appellants.

Caldwell Leslie & Proctor, David K. Willingham and Aron Ketchel; Kaplan Rice, Howard J. Kaplan (*pro hac vice*) and Justin M. Garbaccio (*pro hac vice*) for Defendant and Respondent.

_____

## *INTRODUCTION*

This is an appeal from the trial court's denial of a special motion to strike a cross-complaint pursuant to Code of Civil Procedure section 425.16.  Leaving to one side the issue of whether the express indemnity claim alleged in the cross-complaint "arises from" constitutionally protected activity within the meaning of the "anti-SLAPP" statute (but assuming arguendo that it does), the cross-complainant satisfied its burden to make a prima facie showing of facts sufficient to support a judgment in its favor if the evidence supporting its claim is credited.[1]  Accordingly, we affirm.

## *FACTUAL AND PROCEDURAL SUMMARY*

*Retirement Housing's Fourth Amended Complaint*

In its fourth amended complaint, Retirement Housing Group Foundation and related entities (Retirement Housing) alleged three breach of contract claims against Cain Brothers & Company, LLC (Cain Brothers) based on an alleged "Financial Advisory Agreement," which, according to Retirement Housing, was comprised of Exhibits A through C attached to its pleading.[2]  Cain Brothers filed a demurrer to these causes of action, and the trial court sustained the demurrer without leave to amend, noting in its ruling that Retirement Housing's prior pleadings and attached exhibits demonstrated that "the only binding contract made was for Cain [Brothers] to act as an underwriter to [Retirement Housing] to buy [its] debt obligations for portfolio and/or resale to others and that Cain [Brothers], as an underwriter to [Retirement Housing], was in an

---

[1]    "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 815, fn. 1.)  Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]    The plaintiffs are Retirement Housing Group Foundation (Retirement Housing) and its affiliates Foundation Property Management; Bixby Knolls Towers, Inc.; Gold Country Health Center, Inc.; Mayflower Gardens Health Facilities, Inc.; Mayflower RHF Housing, Inc.; Sun City RHF Housing, Inc.; Holly Hill RHF Housing, Inc.; Merritt Island RHF Housing, Inc.; Martin Luther Foundation, Inc.; Yellowwood Acres, Inc.; Bluegrass RHF Housing, Inc.; St. Catherine RHF Housing, Inc.; and DeSmet RHF Housing, Inc. We include them all in our references to Retirement Housing.

adversarial relationship . . . and not a financial adviser, as such, to [Retirement Housing]. . . ."

Retirement Housing's remaining claims against Cain Brothers were for negligence, negligent misrepresentation, breach of fiduciary duty and constructive fraud. Retirement Housing alleged Cain Brothers' negligence in misrepresenting or failing to disclose information regarding the purported misconduct of co-defendants ACA (mismanagement and underwriting of risky, subprime mortgage-backed securities) and Lehman Brothers (bid-rigging, price-fixing and related misconduct).[3] The trial court directed Cain Brothers to file an answer to these remaining claims. Cain Brothers answered and filed a cross-complaint for express indemnity.

*Cain Brothers' Cross-complaint for Express Indemnity*

In its cross-complaint for express indemnity, Cain Brothers alleges: "At their core, [Retirement Housing's] claims against Cain Brothers are based on the allegation that, until 2007, [it was] kept in the dark about certain risks relating to ACA in connection with the 1998 'plan of refinancing.' However, numerous documents reveal that [Retirement Housing was] aware of precisely these risks at all times—both at the time [it] entered the refinancing plan, and in the years following."

"Indeed, [Retirement Housing] expressly discussed these risks in [its] Official Statement for the 1998 refinancing, and agreed to indemnify Cain Brothers for any expenses incurred if those representations were, or were alleged to be, untrue or misleading.

"Specifically, in connection with the issuance of the 1998 SAVRS, [Retirement Housing] authorized an 'Official Statement' that included a detailed description of precisely these risks. Among other things, the Official Statement represented that a downward revision or withdrawal of the bond insurer's ratings could adversely affect the

---

3    We summarized the complex financial transactions underlying this litigation in connection with a prior appeal. (*Ret. Hous. Group Found. v. Fuld* (Sep. 11, 2012, B230243) [nonpub. opn.].) For purposes of this appeal, however, it is unnecessary to recount the underlying financial transactions in great detail.

market price of the 1998 SAVRS; that the bond insurer 'does not guaranty' the ratings on the 1998 SAVRS; that the Obligated Group's costs [the "Obligated Group" was defined in the Official Statement] could 'increase significantly' due to an ACA downgrade; and that there was 'no assurance' that ACA's credit rating (and thus the SAVRS' credit rating) would continue for any period of time. A true and correct copy of the Official Statement is attached hereto as Exhibit 1.

"The Official Statement further provided that the Cain Brothers had no responsibility to notify the holders of the SAVRS of any proposed changes in such ratings. 'The Issuers, the Obligated Group and the Underwriters have undertaken no responsibility either to bring to the attention of Holders any proposed change in or withdrawal of such rating or to oppose any such proposed revision or withdrawal.' The Official Statement further reiterated that '[a]ny such downward change in or withdrawal of the rating may have an adverse effect on the market price of the 1998 SAVRS.' (Ex. 1 at 90-91.)

"In the Certificate Purchase Agreement, which was executed in 1998, [Retirement Housing] expressly agreed to indemnify Cain Brothers against 'all losses, claims, damages, liabilities or expenses,' including legal expenses, caused by any alleged untrue or misleading statement or material fact contained in the Official Statement. (F[ourth] A[mended] C[omplaint,] Exhibit D § 10.)

"However, [Retirement Housing's] claims against Cain Brothers are based on the proposition that, in fact, representations made in the Official Statement were untrue. That is, [Retirement Housing has] taken the position that Cain Brothers *was* required to obtain a guaranty of ACA's credit rating; that ACA *was* required to guaranty its rating; that [it] did *not* know of risks relating to ACA's credit rating; and that [it] did *not* know of the consequences of an ACA ratings downgrade. These propositions directly contradict the express language of the Official Statement.

"Whether or not [Retirement Housing] ultimately prevail[s] on these claims, all cost incurred by Cain Brothers in defending this action (and any damages for which it may ultimately be held liable) are therefore attributable to 'untrue statements or

misleading statements or alleged untrue statements or alleged misleading statements' of material fact in the Official Statement.

"Consequently, [Retirement Housing is] required by the C[ertificate ]P[urchase ]A[greement] to indemnify Cain Brothers for all 'losses, claims, damages, liabilities or expenses' incurred in defending this action, including all legal expenses."

Thereafter in its cross-complaint, Cain Brothers recounted the chronology of events following execution of the Certificate Purchase Agreement. In December 1998, Cain Brothers alleged, Retirement Housing entered into a "Swap Contract" with Lehman Brothers in order to obtain a fixed rate on the SAVRS, and Lehman, as counterparty, accepted the risk of fluctuations in the floating interest rate attached to the SAVRS as set forth in the Official Statement. According to documents it produced, Retirement Housing discussed the risks and possible consequences of a possible ACA downgrade with its board of directors in 1998.

In early 2001, Cain Brothers alleged, both Standard & Poors and Fitch placed ACA on negative credit watch, indicating ACA's capital levels were near or below regulatory minimums and if it did not raise necessary capital, its credit rating would be downgraded. Retirement Housing was aware of ACA's ratings issues, its insufficient capital and its plans to replace much of its municipal bond business with policies involving mortgage-backed securities which carried higher default expectations. At that time, Retirement Housing explored the possibility of seeking a replacement or additional insurer in light of ACA's problems.

In 2004, ACA was again placed on negative credit watch and Fitch downgraded ACA's credit rating. Retirement Housing experienced at least one failed auction and increased interest rate costs, held extensive discussions regarding the consequences of ACA's credit rating issues in 2004 and 2005 and also expressed concerns about Lehman's proprietary swap valuation methodology, particularly in light of ACA's rating difficulties and the likely cost of terminating the swaps. In mid-2005, Cain Brothers alleged, Lehman informed Retirement Housing the swaps had a negative valuation of $15.8 million, representing the cost to terminate the swaps. In late 2007 and 2008,

Retirement Housing then sought to restructure the transaction and to refinance the SAVRS. Retirement Housing then entered into a "New Swap Contract" with Lehman and in or about July 2008 completed the refinancing of the SAVRS. Two weeks later, Lehman declared bankruptcy and failed to make payments under the New Swap Contract.

Cain Brothers then summarized the procedural history of Retirement Housing's action, beginning with the filing of its original complaint in December 2008. Initially, Cain Brothers was not named as a defendant. In its first amended complaint, however, Retirement Housing added Cain Brothers, ACA and several individuals associated with Lehman as defendants, alleging (among other things) a "Proposal" Cain Brothers and two other firms submitted constituted a "written Refinancing Agreement" between Retirement Housing and Cain Brothers. By the time of its third amended complaint, the trial court had ruled the "Proposal" created no contract duties and did not give rise to a financial advisory relationship and that the Certificate Purchase Agreement set forth only an underwriting relationship and had not been breached. The court granted Retirement Housing's request for leave to amend to allege breach of an oral agreement giving rise to a financial advisory relationship, but by June 2011, the trial court had sustained without leave to amend all of Retirement Housing's contract claims against Cain Brothers.

It its cross-complaint, Cain Brothers denied it had caused or contributed to the damages Retirement Housing alleged in its Fourth Amended Complaint, but if found responsible for any part of Retirement Housing's claimed damages, Cain Brothers alleged it was entitled to indemnity, based on the express indemnity provision set forth in the Certificate Purchase Agreement.

Retirement Housing filed a special motion to strike, arguing Cain Brothers' cross-complaint arose out of protected activity (Retirement Housing's filing of its fourth amended complaint) and Cain Brothers could not establish a probability of prevailing on its claim for express indemnity. (§ 425.16)

Cain Brothers filed a motion to conduct discovery (seeking to depose Dr. Laverne Joseph, Retirement Housing's CEO) pursuant to subsection (g) of section 425.16, and the

trial court granted the motion. Thereafter, Cain Brothers filed its opposition to Retirement Housing's special motion to strike.

After hearing argument, the trial court denied Retirement Housing's special motion to strike, concluding not only that Retirement Housing had failed to carry its initial burden to demonstrate that Cain Brothers' indemnity cause of action alleged in its cross-complaint arose from Retirement Housing's protected activity, but also determined Cain Brothers had demonstrated a probability of prevailing on the merits of its indemnity claim.

Retirement Housing appeals.

## *DISCUSSION*

*Standard of Review and Applicable Law*

The anti-SLAPP statute is aimed at curbing "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a); *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 738-739 (*Jarrow*).) The statute provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An act "in furtherance of" the right to petition includes "any written or oral statement or writing made before a . . . judicial proceeding"; "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . ."; and any "conduct in furtherance of the exercise of the constitutional right of petition . . . ." (§ 425.16, subd. (e)(1), (2), (4).) The anti-SLAPP statute applies to cross-complaints as well as to complaints. (§ 425.16, subd. (h); *Jarrow, supra*, 31 Cal.4th at p. 735, fn. 2.)

There are two components to a motion to strike brought under section 425.16. Initially, the party challenging the lawsuit has the threshold burden to show that the cause of action arises from an act in furtherance of the right of petition or free speech. (*Zamos*

*v. Stroud* (2004) 32 Cal.4th 958, 965; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Once that burden is met, the burden shifts to the complaining party to demonstrate a probability of prevailing on the claim. (*Zamos v. Stroud, supra*, 32 Cal.4th at p. 965; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 (*City of Cotati*).) To satisfy the latter prong, the plaintiff "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821; see also *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 [to establish a probability of prevailing, a plaintiff must substantiate each element of the alleged cause of action through competent, admissible evidence].) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute--i.e., that arises from protected speech or petitioning and lacks even minimal merit--is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We independently review the record to determine both whether the asserted causes of action arise from the defendant's (or cross-defendant's) free speech or petition activity, and, if so, whether the plaintiff (or cross-complainant) has shown a probability of prevailing. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

Retirement Housing appeals from the trial court's denial of its motion to strike Cain Brothers' cross-complaint for indemnity, noting the trial court initially concluded the indemnity claim involved protected activity. In deciding to grant Cain Brothers' request to conduct discovery (the deposition of Dr. Laverne Joseph, Retirement Housing's CEO) as to the second prong of section 425.16, the trial court observed the indemnity claim followed closely in time after the filing of Retirement Housing's complaint and, presented with no authority to the contrary, concluded the first prong of section 425.16 had been met. In ruling on the merits of the special motion to strike,

however, the trial court determined (1) Retirement Housing had failed to meet its initial burden to demonstrate that the cross-complaint's indemnity claim arose from activity protected by section 425.16 and also concluded (2) Cain Brothers had carried its burden to establish a probability of prevailing on the merits of its express indemnity claim such that the special motion to strike was properly granted on either independent ground.

Because a claim is subject to being stricken pursuant to section 425.16 if and only if both prongs of the anti-SLAPP statute are satisfied—meaning the claim: (1) arises from protected speech or petitioning *and* (2) lacks even minimal merit (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89), we assume for the sake of Retirement Housing's argument on appeal that it satisfied its burden of proof as to this first prong of the statute and address the issue of whether Cain Brothers satisfied its burden on the second prong.

If a challenged cause of action arises from protected petitioning activity, a court ruling on an anti-SLAPP motion then "'determines whether the plaintiff [or cross-complainant] has demonstrated a probability of prevailing on the claim.'"  (*Jarrow, supra,* 31 Cal.4th at p. 741, citation omitted; *Navellier v. Sletten, supra,* 29 Cal.4th at p. 93 [to withstand a special motion to strike, a plaintiff must demonstrate that the claims are legally sufficient]; *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989 [same].)  The plaintiff must also present competent admissible evidence sufficient to overcome any privilege or defense to the claim asserted by the defendant.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 (litigation privilege Civil Code § 47, subd. (b)).)  The plaintiff must show there is admissible evidence that, if credited, would be sufficient to sustain a favorable judgment, similar to but not identical to the burden in opposing a summary judgment motion.  (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108; and see Weil & Brown, Cal. Prac. Guide: Civ. Proc. Before Trial, *supra,* ¶ 7:1021.5, pp. 7(II)-56 to 7(II)-57.)  The court does not weigh credibility or compare relative strength of the evidence.  The court considers defendant's evidence only to determine if it defeats plaintiff's showing as a matter of law.  (*Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 291; *Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 522; *Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151

Cal.App.4th 688, 699-700.)

In this case, the basis for Cain Brothers' indemnity cause of action was Retirement Housing's alleged refusal to honor its contractual obligations. Cain Brothers' burden was to make a prima facie showing of facts supporting its claim for express indemnity, a cause of action which has three elements: (1) the existence of a valid contract for indemnity; (2) Cain Brothers' performance of the contract's provisions giving rise to the indemnity claim and (3) a loss for which Cain Brothers is entitled to indemnification. (*Four Star Elec., Inc. v. F & H Constr.* (1992) 7 Cal.App.4th 1375, 1380.)

In its cross-complaint, Cain Brothers sought indemnity from Retirement Housing pursuant to the express indemnity provision set forth in the Certificate Purchase Agreement. According the allegations of Cain Brothers' cross-complaint, Retirement Housing's claims against Cain Brothers are based on allegations Cain Brothers was required to obtain a guaranty of ACA's credit rating; ACA was required to guaranty its rating; Retirement Housing did not know of risks relating to ACA's credit rating; and Retirement Housing did not know the consequences of an ACA ratings downgrade. According to Cain Brothers' allegations in its cross-complaint, these allegations in Retirement Housing's fourth amended complaint directly contradict the express language of the Official Statement and therefore Retirement Housing's entire case is premised on the allegation that representations in the Official Statement are false. Quoting the Certificate Purchase Agreement, Cain Brothers says Retirement Housing agreed to "'indemnify and hold harmless' Cain Brothers 'against any and all losses, claims, damages, liabilities or expenses (including legal or other expenses incurred by it in connection with investigating any claims against it and defending any actions) whatsoever caused by *any **untrue statement or misleading statement or alleged untrue statement or alleged misleading statement of material fact contained in the Official Statement** . . . .'* ([Fourth ]A[mended C[omplaint,] Exhibit D § 10 (emphasis added).)" According to Cain Brothers, it follows that Retirement Housing must indemnify Cain Brothers for all costs relating to its defense against these allegations that representations of material fact in the Official Statement were untrue or misleading, and,

in fact, "Cain Brothers' defense relies largely on the very facts set forth in the Official Statement regarding the risks and consequence of an ACA downgrade, and [Retirement Housing's] knowledge of these facts." Cain Brothers presented evidence of considerable attorney fees and other expenses incurred in defending against Retirement Housing's claims.

Retirement Housing's position is that the express indemnity provision should not apply under the circumstances of this case. Relying on a notice provision in section 10(b), notwithstanding the apparent breadth of the indemnity provision of section 10(a) itself (that "to the extent permitted by law[,]" Retirement Housing agreed to indemnify Cain Brothers in "defending any actions whatsoever"), Retirement Housing argues the indemnity provision is limited to third party claims. California law is to the contrary. "[T]he California Supreme Court has defined 'indemnity' as the obligation resting on one party to make good a loss or damage another party has incurred.' [Citation.] This definition is *not* limited to third party claims . . . . Civil Code section 2772 'plainly states that indemnity may apply to either direct or third party claims.'" (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1024, citing *Rossmoor Sanitation, Inc. v. Pylon Inc.* (1975) 13 Cal.3d 622, 628, italics added, further citations omitted.)

Moreover, to the extent Retirement Housing cites section 10(b) in furtherance of its argument that that section constitutes an exception to the indemnity contemplated under section 10(a), it necessarily identifies a disputed question of fact at best. When Retirement Housing's CEO (Joseph) was deposed, he did not identify any representation in the Official Statement as one made by Retirement Housing "in reliance upon or in conformity with written information furnished . . . by the Underwriters specifically for use therein" such that any exception should apply; in fact, he had no recollection of receiving any written information from Cain Brothers or having any conversations with Cain Brothers in this regard at all. He actually testified he "[did] not know" if Retirement Housing's own counsel (Latham and Watkins) had prepared the Official Statement he (Joseph) signed and adopted on behalf of Retirement Housing, and he also testified the

documents were "so complicated" he was not sure "*anybody* [a]t R[etirement ]H[ousing]" understood them.  (Italics added.)  Retirement Housing's arguments that the indemnity provision should not apply (because it is Cain Brothers' fault ACA failed to guaranty its rating, it (Retirement Housing) did not know of the risks relating to ACA's credit rating because Cain Brothers should have, but did not, disclose them and it is Cain Brothers' fault it (Retirement Housing) did not know the consequences of a ratings downgrade)) contradict the express language of the Official Statement.

Accordingly, Cain Brothers demonstrated that its indemnity cause of action (the only cause of action alleged in the cross-complaint) had at least "minimal merit" and therefore was not subject to a special motion to strike.  (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.)

Accordingly, the trial court's order is properly affirmed.

### *DISPOSITION*

The order is affirmed.  Cain Brothers is to recover its costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**


**SEGAL, J.**[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.